[No. A036998. First Dist., Div. Four. May 20, 1987.]

ROSSO, JOHNSON, ROSSO & EBERSOLD et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
PATTI FITZPATRICK-POTTER, Real Party in Interest.

COUNSEL

Patricia Wilson and Hadfield & Jorgensen for Petitioners.

No appearance for Respondent.

William L. Veen and Kevin Lancaster for Real Party in Interest.

OPINION

POCHÉ, J.—Petitioners, an attorney and the law firm of which he is a member, seek a writ of mandate or prohibition to restrain respondent court from requiring disclosure of the names of persons who responded to an advertisement of petitioners. We agree that the names of these persons are protected by the attorney-client privilege.

Petitioners placed a newspaper advertisement directed toward women who might have suffered problems arising from the use of the Dalkon Shield intrauterine device. The advertisement invited such women to contact the firm at a toll-free number. Patti Fitzpatrick-Potter (hereinafter plaintiff) saw the advertisement in late December 1982 and on January 3, 1983, called petitioners. Petitioners sent her a packet of materials including a questionnaire and retainer agreement which plaintiff did not return until December 8, 1983. Petitioners reviewed the questionnaire and decided not to undertake plaintiff's case. On January 25, 1984, they sent plaintiff a letter advising her to contact another attorney if she wished to pursue her case and to do so " 'at the earliest opportunity because there are certain time limitations imposed by law that may prevent you from putting forward a claim if you delay.' "

Plaintiff contacted the firm of Conklin, Davids & Friedman (hereinafter Conklin) and met with them on or about January 27, 1984, at which time

she signed a retainer agreement with them. Conklin did not file suit against the manufacturer of the Dalkon Shield but against petitioners alleging that petitioners had missed the statute of limitations. Petitioners took the position by answer and cross-complaint that it was the Conklin firm which had missed the statute of limitations.

Plaintiff requested production of petitioners' master list of Dalkon Shield cases and, when petitioners refused on the grounds of attorney-client privilege and relevance, brought a motion to compel disclosure. The motion was granted on July 7, 1986, and the instant petition was filed on December 2, 1986.

■ Plaintiff first argues that the petition should be denied as untimely, citing *Popelka Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 499 [165 Cal.Rptr. 748]. In *Popelka,* the court stated that ordinarily a court will consider untimely a petition filed "after the 60-day period applicable to appeals, and *should* do so absent 'extraordinary circumstances' justifying the delay." (Italics in original.) The Supreme Court took a different approach in *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 163 [181 Cal.Rptr. 784, 642 P.2d 1305], where it reviewed a petition filed seven months after the original order. The *Peterson* court applied the reasoning of laches which "requires an unreasonable delay in filing the petition plus prejudice to real party." (*Ibid.*)

Petitioners give two reasons to explain the delay. Petitioners had made a motion for summary judgment which, if granted, would have mooted the discovery order. The motion, which argued that the statute of limitations did not commence until October 28, 1983, was denied on October 31, 1986. Petitioners also delayed because, after the filing of the cross-complaint against Conklin, new counsel was required to represent plaintiff and was not substituted into the case until October 13, 1986.

Considering the explanation given by petitioners and the fact that plaintiff has not contended she suffered any prejudice by the delay, we will consider the petition on its merits.

■ Petitioners first contend that the Dalkon Shield master list is not relevant or likely to lead to the discovery of admissible evidence in this case. If plaintiff's complaint against petitioners were limited to allegations that petitioners were merely negligent in allowing the statute of limitations to run, petitioners' argument would be meritorious. Petitioners' actions in other cases have no relevance direct or indirect to such allegations.

However, plaintiff also alleges that petitioners represented themselves as experts in Dalkon Shield intrauterine-device litigation and that these repre-

sentations were false and fraudulent. Plaintiff further alleges that petitioners acted in conscious disregard of plaintiff's rights and that she is entitled to punitive damages.

Other instances of alleged improper practices might arguably be relevant to plaintiff's claim for punitive damages. (See *Colonial Life & Accident Ins. Co.* v. *Superior Court* (1982) 31 Cal.3d 785, 791-792 [183 Cal.Rptr. 810, 647 P.2d 86].) In *Colonial Life,* plaintiff brought an action for general and punitive damages based on defendants' conduct in attempting to settle an insurance claim. She sought information about other cases handled by the agent involved in her case. The Supreme Court held that discovery was required on the issue of punitive damages. (*Ibid.*) Although *Colonial Life* and most of the cases cited therein are insurance cases, the discussion of punitive damages logically applies to the instant case. If plaintiff unearthed a pattern of disregard for the interests of those women contacting petitioners in favor of, for example, pursuing only certain types of cases, plaintiff might well obtain evidence to support a claim for punitive damages. Given the deference accorded to the trial court's discretion in matters of relevance in discovery (*Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 173 [84 Cal.Rptr. 718, 465 P.2d 854]), we would not be inclined to reverse the decision on this ground.

However, if the attorney-client privilege applies to the identity of nonparty clients or prospective clients on the master list, the identity of these clients may not be discovered even if relevant. "While it is perhaps somewhat of a hyperbole to refer to the attorney-client privilege as 'sacred,' it is clearly one which our judicial system has carefully safeguarded with only a few specific exceptions." (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 600, fn. omitted [208 Cal.Rptr. 886, 691 P.2d 642].) ■ The privilege applies to confidential communications during preliminary negotiations with the attorney even if employment is declined. (*Estate of Dupont* (1943) 60 Cal.App.2d 276, 287-288 [140 P.2d 866].)

■ As a general rule, the identity of an attorney's clients is not protected by the attorney-client privilege. (*United States* v. *Hodge and Zweig* (9th Cir. 1977) 548 F.2d 1347, 1353; *Willis* v. *Superior Court* (1980) 112 Cal.App.3d 277, 291 [169 Cal.Rptr. 301]; McCormick on Evidence (3d ed. 1984) § 90, pp. 215-217; 2 Witkin, Cal. Evidence (3d ed. 1986) § 1120, pp. 1059-1060.) "Courts in a few jurisdictions have supported the view that in unusual situations, particularly where so much is already known of the attorney-client relationship that to disclose a client's name will betray a confidential communication, the identity of a client may be treated as privileged information." (Annot., 16 A.L.R.3d 1047, 1053; *State* v. *Bean* (Iowa 1976) 239 N.W.2d 556, 561; see also 81 Am.Jur.2d, Witnesses, § 213, pp. 244-246.)

Because the people who are on the master list of clients have answered an advertisement directed to women who have suffered injury arising from the use of a Dalkon Shield, revealing their names would reveal the nature of a medical problem, ordinarily considered a confidential communication. This situation is analogous to that in the doctor-patient privilege where by definition only confidential communications are privileged. If the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. (*Rudnick* v. *Superior Court* (1974) 11 Cal.3d 924, 933, fn. 13 [114 Cal.Rptr. 603, 523 P.2d 643]; *Ascherman* v. *Superior Court* (1967) 254 Cal.App.2d 506, 515-516 [62 Cal.Rptr. 547].) However, disclosure of the identity of the patient violates the physician-patient privilege where such disclosure reveals the patient's ailment. (*Blue Cross* v. *Superior Court* (1976) 61 Cal.App.3d 798, 800 [132 Cal.Rptr. 635] [patients treated for psoriasis]; *Marcus* v. *Superior Court* (1971) 18 Cal.App.3d 22, 24 [95 Cal.Rptr. 545, 74 A.L.R.3d 1051] [patients given angiogram]; *Costa* v. *Regents of Univ. of California* (1953) 116 Cal.App.2d 445, 463 [254 P.2d 85] [patients receiving certain cancer treatments].) Any identification of a psychotherapist's patient is precluded because any treatment "reveals the existence and, in a general sense, the nature of the malady." (*Smith* v. *Superior Court* (1981) 118 Cal.App.3d 136, 141-142 [173 Cal.Rptr. 145].)

In refusing to allow the discovery of the identity of a psychologist's patients, the *Smith* court distinguished the line of cases holding that the identity of an attorney's client is generally not protected, explaining: "Since the disclosure of the identity of the client in the attorney-client setting usually says nothing regarding the reason for legal counsel or the content of the communication with the attorney, the cases cited are distinguishable." (118 Cal.App.3d at p. 142.) Since disclosure here reveals the problem of the client, this is one of the exceptional cases where the identity of the client should be protected.

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting discovery of petitioners' master list of Dalkon Shield cases.

Anderson, P. J., and Channell, J., concurred.