[No. D035392. Fourth Dist., Div. One. Nov. 13, 2000.]

EUGENE HOOSER, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
ANDREA RAY, Real Party in Interest.

**COUNSEL**

Eugene Hooser, in pro. per., for Petitioner.

No appearance for Respondent.

Dunk & Associates and Andrew P. Dunk III for Real Party in Interest.

**OPINION**

**McINTYRE, J.**—In this case, we decide the issue of whether a judgment debtor who is an attorney must disclose certain client information not subject

to the attorney-client privilege in a judgment debtor examination. We conclude, based on the clients' privacy interests, that the attorney judgment debtor cannot be compelled to disclose to the judgment creditor (1) the identities of clients whose relationship with the attorney has not been disclosed to third parties or (2) client-specific information regarding funds held by the attorney in a client trust account.

Eugene Hooser represented Andrea Ray, his former sister-in-law, in a personal injury action and obtained a $50,000 settlement on her behalf. Apparently as the result of a disagreement between Hooser and Ray regarding attorney fees, Hooser did not distribute any of the settlement funds to Ray. Ray ultimately sued Hooser for misappropriation of the funds and made an offer, pursuant to Code of Civil Procedure section 998, to settle the action for $79,999.99. Hooser accepted the offer and the court entered a judgment in Ray's favor.

To collect on the judgment, Ray served Hooser with an order to appear for a judgment debtor's examination and a subpoena duces tecum to produce certain documents at the examination, including:

"1. A list of your present clients for whom you are performing services[,] with their addresses and phone numbers. [¶] . . . [¶]

"5. A list of all current claims or cases, both filed and unfiled, that you are handling on behalf of clients wherein you have a monetary interest or an expectation of receiving money for your services wherein you identify the names of the insurance adjusters, defense counsel, or entity that you expect payment to come from [sic]. [¶] . . . [¶]

"10. All bank statements for bank accounts maintained by or on behalf of you for the last 5 years, including, but not limited to your attorney-client trust account.

"11. Any and all statements issued by the banking [institution] wherein you maintain your attorney-client trust account for the period of April 1, 1998 to the present that pertain to your attorney-client trust account."

Hooser filed a motion to quash the subpoena duces tecum, objecting, in part, to the foregoing requests. The superior court denied the motion except insofar as items 1 and 5 sought the addresses and telephone numbers of Hooser's clients. It held that, except as to the addresses and telephone numbers, Hooser failed to establish that the attorney-client privilege applied to the documents sought by items 1 and 5. As to items 10 and 11, the court

found that Hooser failed to show that his attorney-client trust account was exempt from the enforcement of Ray's judgment.

Hooser filed a petition for writ of mandate seeking in part a reversal of the trial court's order denying his motion to quash. He contends that he is protected from responding to Ray's requests by virtue of the attorney-client privilege and his clients' rights of privacy. We issued a stay insofar as the superior court's order required disclosure of information sought in the items identified above and requested a response. Having received a response, we address the propriety of the requests.

## DISCUSSION

### 1. *General Principles*

Detailed statutory provisions govern the manner and extent to which civil judgments may be enforced. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546 [39 Cal.Rptr.2d 432].) One statutory procedure designed to aid a judgment creditor in his enforcement efforts is a judgment debtor examination. (Code Civ. Proc., §§ 708.110-708.205.) Pursuant to the statutory procedure, the judgment creditor may obtain an order requiring the judgment debtor to appear before the court, or a court-appointed referee, to furnish information that will aid in the enforcement of the money judgment. (Code Civ. Proc., § 708.110, subd. (a).) At the examination, the judgment creditor has the opportunity to inquire of the judgment debtor regarding property the debtor has, or may acquire in the future, that may be available to satisfy the judgment. (*Ibid.*; Recommendation Relating to Enforcement of Judgment Law (Sept. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1124.) ▮ A judgment debtor examination is intended to allow the judgment creditor a wide scope of inquiry concerning property and business affairs of the judgment debtor. (*Young v. Keele* (1987) 188 Cal.App.3d 1090, 1093 [233 Cal.Rptr. 850]; see also *Troy v. Superior Court* (1986) 186 Cal.App.3d 1006, 1014 [231 Cal.Rptr. 108] [the purpose of the examination is "to leave no stone unturned in the search for assets which might be used to satisfy the judgment."].)

Despite the broad scope of inquiry permitted at a judgment debtor examination, the judgment debtor generally is entitled to assert the same privileges that a trial witness may assert as a basis for refusing to answer questions or respond to requests for information put to him. (Code Civ. Proc., § 708.130, subd. (a) [a witness at a judgment debtor examination "may be required to appear and testify . . . in the same manner as upon the trial of an issue"].) Thus, subject to certain exceptions (see Code Civ. Proc., § 708.130, subd.

(b) [marital privilege not applicable]; *Young v. Keele, supra,* 188 Cal.App.3d at pp. 1092-1093 [evidentiary bar to communications during settlement negotiations]), based on an appropriate showing, a judgment debtor may refuse to respond to requests for privileged information. (*Troy v. Superior Court, supra,* 186 Cal.App.3d at p. 1010 [privilege against self-incrimination]; *Coleman v. Galvin* (1947) 78 Cal.App.2d 313, 319-322 [177 P.2d 606] [same]; see generally Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 1998) ¶¶ 6:1328-6:1335, pp. 6G-15 to 6G-17.) Hooser relies on the attorney-client privilege and his clients' rights of privacy as the bases for refusing to respond to Ray's discovery requests.

## A. *The Attorney-client Privilege*

The attorney-client privilege protects confidential communications between the attorney and his or her client in the course of their professional relationship. (Evid. Code, § 954; *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371 [20 Cal.Rptr.2d 330, 853 P.2d 496].) "The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' " (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371], quoting *Mitchell v. Superior Court* (1984) 37 Cal.3d 591, 599 [208 Cal.Rptr. 886, 691 P.2d 642].) To this end, an attorney is required "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e).) ■ The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions. (*Estate of Dupont* (1943) 60 Cal.App.2d 276, 287-289 [140 P.2d 866]; see Evid. Code, § 951.)

## B. *Privacy Protection*

■ Information that is not protected by statutory privilege may nonetheless be shielded from discovery, despite its relevance, where its disclosure would invade an individual's right of privacy. (*Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 656 [125 Cal.Rptr. 553, 542 P.2d 977].) The right of privacy is an "inalienable right" secured by article I, section 1 of the California Constitution. (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.4th at p. 656.) It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding

one's personal life (e.g., *Britt v. Superior Court* (1978) 20 Cal.3d 844, 855-856 [143 Cal.Rptr. 695, 574 P.2d 766]), including his or her financial affairs (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at p. 656), political affiliations (*Britt v. Superior Court, supra,* 20 Cal.3d at pp. 852-862), medical history (*id.* at pp. 862-864), sexual relationships (*Morales v. Superior Court* (1979) 99 Cal.App.3d 283, 289-290 [160 Cal.Rptr. 194]), and confidential personnel information (*El Dorado Savings & Loan Assn. v. Superior Court* (1987) 190 Cal.App.3d 342 [235 Cal.Rptr. 303]).

■ The constitutional right of privacy does not provide absolute protection against disclosure of personal information; rather it must be balanced against the countervailing public interests in disclosure. (*Vinson v. Superior Court* (1987) 43 Cal.3d 833, 842 [239 Cal.Rptr. 292, 740 P.2d 404].) For example, there is a general public interest in " ' "facilitating the ascertainment of truth in connection with legal proceedings" ' " (*Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313, 316 [187 Cal.Rptr. 4], quoting *Britt v. Superior Court, supra,* 20 Cal.3d at p. 857) and in obtaining just results in litigation (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at p. 657). The public also has an interest in facilitating the enforcement of judgments, thus "ensuring that those injured by the actionable conduct of others receive full redress of those injuries." (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1071 [95 Cal.Rptr.2d 864].) If these public interests in disclosure of private information are found to be "compelling," the individual's right of privacy must give way and disclosure will be required. (*Harris v. Superior Court* (1992) 3 Cal.App.4th 661, 664 [4 Cal.Rptr.2d 564].)

■ In determining whether disclosure is required, the court must indulge in a "careful balancing" of the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other. (*Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 712 [21 Cal.Rptr.2d 200, 854 P.2d 1117].) The court must consider the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information. (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at pp. 657-658.) Based on an application of these factors, the more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery that will be required before disclosure will be permitted. (*Johnson v. Superior Court, supra,* 80 Cal.App.4th at p. 1070; *Hinshaw, Winkler, Draa, Marsh & Still v. Superior Court* (1996) 51 Cal.App.4th 233, 237 [58 Cal.Rptr.2d 791].)

## 2. *Is the Requested Information Protected Against Disclosure?*

### A. *The Identities of Hooser's Clients*

In the proceedings below, Hooser challenged items 1 and 5, arguing that insofar as these requests seek disclosure of the identities, addresses and telephone number of his clients, he is protected from responding by the attorney-client privilege. The superior court, in ruling on Hooser's motion to quash, held that Hooser was not required to produce the clients' addresses or telephone numbers, but was required to provide a list of the clients' names. We issued an order staying the superior court's order only insofar as it required production of records, and thus the issue currently before us is whether Hooser can properly be required to produce a list of his clients' names.

■    Generally, the identity of an attorney's client is not considered within the protection of the attorney-client privilege. (*People v. Chapman* (1984) 36 Cal.3d 98, 110 [201 Cal.Rptr. 628, 679 P.2d 62]; *Hays v. Wood* (1979) 25 Cal.3d 772, 785 [160 Cal.Rptr. 102, 603 P.2d 19].) There is a recognized exception to this rule, however, where known facts concerning an attorney's representation of an anonymous client are such that the disclosure of the client's identity would implicate the client in unlawful activities, thus exposing the client to potential investigative action or criminal or civil liability. (See *Hays v. Wood, supra,* 25 Cal.3d 772, and cases cited therein.)

Another recognized exception arises where known facts regarding an attorney's representation are such that the disclosure of the client's identity would betray personal, confidential information regarding the client. (*Rosso, Johnson, Rosso & Ebersold v. Superior Court* (1987) 191 Cal.App.3d 1514, 1518-1519 [237 Cal.Rptr. 242] [disclosure of the clients' identities under the circumstances would reveal private information regarding the clients' medical conditions].) However, Hooser does not make any argument that, by virtue of the nature of his practice or the manner in which he solicits his clients, this limited exception applies under the circumstances.

As Hooser has not established that an exception applies, the trial court correctly concluded that the attorney-client privilege did not apply as a basis for Hooser to refuse to respond to Ray's request for a list of his clients.

■    Although the attorney-client privilege does not apply to prevent the disclosure of the identities of Hooser's clients, we conclude that the identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy. "[E]very person [has the right] to freely confer

with and confide in his attorney in an atmosphere of trust and serenity . . . ." (*Willis v. Superior Court* (1980) 112 Cal.App.3d 277, 293 [169 Cal.Rptr. 301].) Clients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they reasonably expect to remain private. A spouse who consults a divorce attorney may not want his or her spouse or other family members to know that he or she is considering divorce. Similarly, an employee who is concerned about conduct in his workplace, an entrepreneur planning a new business endeavor, an individual with questions about the criminal or tax consequences of his or her acts or a family member who desires to rewrite a will may also consult an attorney with the expectation that the consultation itself, as well as the matters discussed therein, will remain confidential until such time as the consultation is disclosed to third parties, through the filing of a lawsuit, the open representation of the client in dealing with third parties or in some other manner.

Upon such public disclosure of the attorney-client relationship, the client's privacy concerns regarding the fact of the consultation evaporate and there is no longer a basis for preventing the attorney from identifying the client. (See *Satterlee v. Bliss* (1869) 36 Cal. 489, 501.) However, until such a public disclosure occurs, the client's identity is itself a matter of privacy, subject to the protection against involuntary disclosure through compelled discovery against the attorney.

Ray argues that *Willis v. Superior Court, supra,* 112 Cal.App.3d 277, supports her position that the identities of the clients should be disclosed. *Willis* involved a fee dispute between two attorneys arising out of their former association together in the practice of law. One of the attorneys served discovery on the other, seeking the names and addresses of the firm's clients during the time of the attorneys' association, the number of hours each of the attorneys worked on the client matters, the final disposition of each matter and the amount of attorney fees awarded. (*Id.* at pp. 294, 298.) After balancing the interests of the parties and the clients, as well as the state's interests in discovery, the court concluded that the information sought was not privileged as it related to the formerly associated lawyer, who had access to such information during the time of the attorneys' association and thus the disclosure of the requested information was not precluded by the attorney-client privilege. (*Id.* at pp. 294-295.) The court observed that the client's expectation of privacy as to his identity and the fee charged, vis-à-vis an attorney practicing in the law office that he consulted, "is in most circumstances probably nonexistent." (*Id.* at p. 298, fn. omitted.) It held that, so long as the requested information was "restricted [to the] confines of this litigation and . . . not . . . imparted to other persons

beyond the immediate needs of this controversy," disclosure of the information would not violate the clients' privacy interests. (*Id.* at p. 298.)

The analysis of *Willis* has no application in a case such as this, where the judgment creditor has never been privy to the judgment debtor's client information. In this situation, the clients retain a reasonable expectation of privacy as to their identities vis-à-vis the judgment creditor.

Because Hooser's undisclosed clients' rights of privacy are implicated by Ray's request, Ray must make a sufficient showing of a compelling need for the information before its disclosure will be required. She has not made such a showing here. Although Ray has a valid significant interest obtaining information in connection with her attempt to collect on her judgment against Hooser, access to information about the identities of Hooser's undisclosed clients is not particularly helpful in that effort. Although the disclosure of such clients' identities might lead to the discovery of information helpful to Ray in her collection efforts, this possibility is not sufficient to require an intrusion on the clients' privacy rights. Ray has alternative means for discovering information about whether Hooser's undisclosed clients have paid fees to Hooser and, if so, in what amount and where they are deposited or kept, without sacrificing the clients' privacy rights, through requests for information about Hooser's personal bank accounts and direct inquiry of Hooser. Under these circumstances, we conclude that Ray has not made a sufficient showing of need for the requested information to outweigh the privacy rights of Hooser's undisclosed clients.

### B. *Claims or Cases, Filed or Unfiled, and Expected Payors*

Ray's request for information regarding filed claims or cases and persons who might make payments to Hooser's clients arising out of those claims or cases does not seek information that is subject to the attorney-client privilege or that implicates the clients' rights of privacy. Hooser nonetheless argued below that he should not be compelled to provide such information to Ray, who could use the requested information to obtain a lien against the amounts that might be recovered from these sources. Hooser argued that, because Ray might so use the information, its disclosure would be "extremely prejudicial" to his clients and might create a conflict of interest between Hooser and his clients. This argument is unavailing. Any lien in Ray's favor on amounts recoverable from these sources would be limited to amounts payable to Hooser and thus would not have any effect on amounts properly allocable to the client. No conflict of interest or prejudice to the client would result, directly or indirectly, from the disclosure of the requested information. Hooser may be compelled to disclose information regarding filed claims or cases to Ray.

For the same reasons, Hooser also may be required to disclose information regarding unfiled claims or cases, and prospective payors relating thereto, except insofar as such information includes the identities of clients whose relationships with Hooser are as yet undisclosed to third parties. As discussed above, Hooser cannot be compelled to disclose the identities of those clients. Thus, although Ray is entitled to discover information regarding Hooser's current claims or cases, filed or unfiled, including the names of opposing counsel, parties and/or the parties' insurers, Hooser is not required to disclose to her information that would reveal the identities of his undisclosed clients.

## C. *Client Trust Account Information*

An attorney is required to maintain all funds received or held by him or her for the benefit of his or her clients in a trust account. (Rules Prof. Conduct, rule 4-100(A).) The attorney is not permitted to deposit any of his or her own funds into such a trust account. (Rules Prof. Conduct, rule 4-100(A).) To the extent that the funds deposited belong in part, presently or potentially, to the attorney, he or she is required to withdraw the portion of the funds belonging to him or her "at the earliest reasonable time after the [attorney's] interest in that portion becomes fixed," unless the client disputes the attorney's entitlement to that portion of the funds, in which case the attorney must leave the portion on deposit until the dispute is finally resolved. (Rules Prof. Conduct, rule 4-100(A)(2).) Thus, although the attorney may have an interest in certain of the funds maintained in a client trust account, the purpose of the account is to protect and maintain the client's funds. (See *Hamilton v. State Bar* (1979) 23 Cal.3d 868, 876 [153 Cal.Rptr. 602, 591 P.2d 1254].) The attorney is required to maintain complete records regarding client funds maintained in a client trust account and to render appropriate accounts to the client regarding the funds. (Rules Prof. Conduct, rule 4-100(B)(3).)

■ It is clear from the foregoing that Ray is entitled to discover from Hooser information regarding the funds received and held by him in trust for her. However, Hooser's other clients have a right of privacy as to their financial affairs. (*Valley Bank of Nevada v. Superior Court, supra,* 15 Cal.3d at p. 656.) Thus, to the extent that the requested bank statements contain information tying Hooser's other clients to funds held on their behalf, Ray's requests implicate those clients' privacy rights. Ray's right to discover such information depends on whether she can establish a compelling need for the bank statements that outweighs the other clients' privacy interests. We conclude that she has not made such a showing.

In accordance with the Rules of Professional Conduct, any interest that Hooser has in funds on deposit in his client trust account(s) is merely transitory. That interest exists only to the extent that it is not yet fixed and

certain (undisputed); once his interest becomes fixed and undisputed, he is required promptly to withdraw the funds in which he has an interest from the account(s). (Rules Prof. Conduct, rule 4-100(A)(2).) Further, Ray has available other means (for example, through questions at Hooser's examination or interrogatories propounded to him) for determining whether Hooser has an interest in funds on deposit in his client trust account(s) without requiring the disclosure of private and sensitive information about the third party clients. Based on the existence of alternative, nonintrusive methods of discovery, we conclude that Ray has not established a compelling need for the disclosure of the bank statements relating to third party clients' funds on deposit in Hooser's client trust account(s).

### DISPOSITION

Let a writ of mandate issue directing the superior court to modify its order granting in part and denying in part the motion to quash to provide that Hooser need not respond to Ray's requests for the names of Hooser's undisclosed clients and that Hooser may redact any client-specific information set forth from bank statements relating to client trust account(s) maintained by him. The stay issued on April 7, 2000, is vacated when this opinion is final as to this court. Each party to bear its own costs on appeal.

Kremer, P. J., and Haller, J., concurred.