[No. B187171. Second Dist., Div. Eight. May 15, 2006.]

KEVIN TIEN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
TENET HEALTHCARE CORP., Real Party in Interest.

529

## COUNSEL

Law Office of Joseph Antonelli, Joseph Antonelli and Janelle Carney for Petitioner.

No appearance for Respondent.

Gibson, Dunn & Crutcher, William D. Claster and Michele L. Maryott for Real Party in Interest.

OPINION

**COOPER, P. J.**—In this putative class action lawsuit alleging wage and hour violations against an employer, the trial court ordered plaintiffs to provide the defendant with the names, addresses and telephone numbers of all putative class members who contacted plaintiffs' counsel. (For simplicity, we refer to the putative class members as class members.) Most or all of the class members who contacted plaintiffs' counsel did so in response to a neutral letter sent to a sample of class members. Plaintiffs claim the compelled disclosure violates the attorney-client privilege, the attorney work product doctrine, and the privacy rights of the persons who contacted plaintiffs' counsel. We agree with the last of these contentions. Accordingly, we grant plaintiffs' writ petition challenging the propriety of the trial court's order.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2004, petitioner Kevin Tien and another individual filed this putative class action lawsuit against Tenet Healthcare Corporation.[2] The action seeks relief on behalf of current and former hourly employees of Tenet who were allegedly denied meal and rest breaks, as well as proper payment for overtime work.[3]

In July 2004, plaintiffs served two special interrogatories, one asking for the number of class members, and the other asking for their names, addresses, and telephone numbers. Tenet responded that there were approximately 50,000 class members, but it objected on various grounds to the interrogatory requesting their names and contact information.

In February 2005, the parties resolved the discovery dispute by stipulating to an order under which a neutral letter was to be sent to a random sample of class members selected by Tenet pursuant to an agreed-upon procedure. Under the stipulated order, Tenet was to provide the necessary mailing labels to a neutral third party retained to handle the mailing. Thus, while Tenet would know the identities of the persons to whom the neutral letter would be sent, plaintiffs would not.

The text of the neutral letter read as follows:

---

[1] Although the petition was filed by only one of the two plaintiffs, for consistency purposes, we will refer to the contentions raised in the petition as being those of plaintiffs.

[2] Sometime after the action was filed in Los Angeles County Superior Court, it was coordinated with a similar action filed against Tenet in San Diego County Superior Court. The coordinated proceeding was assigned to the Los Angeles County Superior Court.

[3] It appears the employees in question are current and former employees of facilities owned by Tenet *subsidiaries*. For simplicity, we will refer to them as current or former employees of Tenet.

"To Whom It May Concern:

"This letter is to advise you that a lawsuit has been filed on behalf of certain current and former employees of healthcare facilities owned by subsidiaries of Tenet Healthcare Corporation in California. The lawsuit involves claims that non-exempt employees of Tenet hospitals at times were not provided meal periods and/or rest breaks and were not compensated for those missed meal periods and/or rest breaks. Further, the lawsuit also involves a claim that the hourly employees['] regular rate of pay was not properly calculated, thus resulting in improperly calculated overtime.

"The lawsuit mentioned above has been filed as a potential class action. As a current or former employee of a Tenet hospital, you may be a member of a potential class. If you would like more information please call the Law Firm of Joseph Antonelli at [telephone number].[4]

"**You are not required to call anyone regarding this lawsuit unless you personally wish to do so. If you do elect to call, please be assured that doing so will not have any negative effect on your employment with any Tenet-related facility.**" (Original boldface.)

The neutral letter was sent to approximately 3,300 class members.

In August 2005, Tenet served special interrogatories. One of the special interrogatories requested the names of, and contact information for, all class members who contacted plaintiffs' counsel in response to the neutral letter (interrogatory 16), while another requested the same information for other class members who had contacted plaintiffs' counsel (interrogatory 17).[5]

Plaintiffs moved for a protective order, claiming the information sought was protected by the attorney-client privilege, the attorney work product doctrine, and the privacy rights of those class members who contacted plaintiffs' counsel. In a declaration he filed in support of the motion, plaintiffs' counsel, Joseph Antonelli, stated that "[o]ut of the 3,300 neutral mailers," his office received calls from 81 class members, of which 49 had retained his firm to represent their interests. Antonelli stated that the class members who contacted his office had requested that their identities remain confidential and that some had expressed concern their current jobs would be in jeopardy if Tenet discovered they had spoken with him. Antonelli stated that "[o]ne person in particular refused to give her name and/or address to

---

[4] Although not stated in the letter, Joseph Antonelli is plaintiffs' counsel.

[5] The interrogatories sought the names of class members who contacted any of the named plaintiffs or anyone acting on plaintiffs' behalf. The parties and the trial court have treated the interrogatories as seeking only the names of class members who contacted plaintiffs' *counsel.*

[Antonelli's] office unless [the] office could guarantee that defendant would not know that she spoke with [Antonelli]." Antonelli did not expressly state that he had provided such assurances to this or any other class member.

At the hearing, the trial court observed that the information sought was relevant because it could lead to the discovery of admissible evidence, as the class members who contacted Antonelli "have shown an interest in the litigation" (by virtue of their having contacted Antonelli). After hearing argument, the court took the matter under submission.

A few days later, the court issued an order denying plaintiffs' motion for a protective order. The court acknowledged that compelling disclosure of the names of the class members who contacted Antonelli would impact their privacy rights, but it concluded those rights were outweighed by Tenet's right to the discovery. With respect to the attorney-client privilege claim, the court observed that a client's identity generally is not protected. While there are certain exceptions to this general rule, the court concluded they did not apply in this case. The court's order did not expressly discuss plaintiffs' attorney work product contention.

The court stayed its order for 30 days to permit plaintiffs to advise the affected class members so they would have time to "seek exemption" from the order.

A few weeks later, plaintiffs informed the court that their counsel had sent a letter to 82 class members who had contacted counsel's office, asking whether they would consent to the release of their identities. Of the 82, 24 consented to the disclosure of their identities, 24 refused to consent, and 34 did not respond to counsel's letter. Plaintiffs stated they intended to disclose the names of those class members who had consented to disclosure, but they sought "guidance" from the court regarding the remaining class members.

The matter was discussed at a November 2005 status conference where the court reaffirmed its ruling.[6] The court ordered plaintiffs to provide Tenet with the requested information concerning the class members who had consented to disclosure and those who had not responded to the letter from plaintiffs' counsel within 15 days. As to identifying information for those who had expressly stated they did not consent to disclosure, the court stayed its order for an additional 30 days to allow counsel time to seek appellate review.

---

[6] At the conference, plaintiffs' counsel provided slightly different numbers concerning the responses to the letter he sent to the 82 class members who had contacted his office. According to plaintiffs' counsel, 22 had consented to the disclosure of their identities, 25 had not consented, one had stated both that she did and did not consent to disclosure, and 34 had not responded to the letter from plaintiffs' counsel.

Plaintiff Tien filed a writ petition challenging the trial court's order to the extent it required disclosure of the names of, and contact information for, the class members who did not expressly consent to disclosure (approximately 60 persons). We stayed the order and issued an alternative writ. We then received additional briefing from the parties and heard oral argument.

## DISCUSSION

### 1. *The Standard of Review.*

"We review discovery orders under the abuse of discretion standard, and where the petitioner seeks relief from a discovery order that may undermine a privilege, we review the trial court's order by way of extraordinary writ. (*Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 330 [87 Cal.Rptr.2d 813].) 'Where there is a basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was "no legal justification" for the order granting or denying the discovery in question. [Citations.]' (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612 [56 Cal.Rptr.2d 341].) We defer to the court's factual findings concerning privilege if they are supported by substantial evidence." (*Scripps Health v. Superior Court* (2003) 109 Cal.App.4th 529, 533 [135 Cal.Rptr.2d 126].) Where the facts are undisputed, the privilege claim is one of law which is reviewed de novo. (See *Sierra Vista Hospital v. Superior Court* (1967) 248 Cal.App.2d 359, 364–365 [56 Cal.Rptr. 387].)

### 2. *The Discovery Sought by Tenet Is Relevant.*

The scope of discovery is very broad. "[A]ny party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action . . . if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010.) This right to discovery includes the right to "obtain[] . . . the identity and location of persons having knowledge of any discoverable matter." (*Ibid.*)

Although plaintiffs questioned Tenet's need for the discovery at issue in this writ proceeding, it does not appear that they expressly argued before the trial court (or in their petition) that the discovery should not be permitted because it is irrelevant. As a matter of caution, however, we address the question.

Although it is not necessarily the case, it is reasonable to assume that at least some of the class members who contacted plaintiffs' counsel may have

relevant information about the issues in the case (beyond the mere fact that they are class members). It is also reasonable to assume that at least some of these class members have more information than other class members who did not contact plaintiffs' counsel. "Given the deference accorded to the trial court's discretion in matters of relevance in discovery" (*Rosso, Johnson, Rosso & Ebersold v. Superior Court* (1987) 191 Cal.App.3d 1514, 1518 [237 Cal.Rptr. 242] (*Rosso*)), and the broad scope of the discovery statutes, we cannot say the trial court abused its discretion in concluding the discovery was relevant.

3. *Compelling Disclosure of the Identities of Class Members Who Contacted Plaintiffs' Counsel Does Not Violate the Attorney Work Product Doctrine.*

The scope of the attorney work product privilege is codified in Code of Civil Procedure section 2018.030, which provides:

"(a) A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances.

"(b) The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice."

We fail to see how the names of class members who contacted plaintiffs' counsel constitute the work product of plaintiffs' counsel. Indeed, the petition offers no explanation why the information constitutes attorney work product. It notes only that the policy of this state is to prevent attorneys "from taking undue advantage of their adversary's industry and efforts." However, the persons who contacted plaintiffs' counsel did so in response to a neutral letter mailed by a third party to persons whose names and contact information were provided by Tenet. Plaintiffs' counsel was merely the passive recipient of some telephone calls. Therefore, the trial court's discovery order does not violate the attorney work product doctrine.

4. *Compelling Disclosure of the Identities of Class Members Who Contacted Plaintiffs' Counsel Does Not Violate the Attorney-client Privilege.*

The attorney-client privilege is "a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." (Evid. Code, § 954; see also Bus. & Prof. Code, § 6068,

subd. (e)(1) [an attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"].) " '[C]onfidential communication between client and lawyer' means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.) The term "client" is not limited to persons who retain an attorney. Rather, it includes any person who "consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity." (Evid. Code, § 951; see also *Hooser v. Superior Court* (2000) 84 Cal.App.4th 997, 1003 [101 Cal.Rptr.2d 341] (*Hooser*) ["The attorney-client privilege applies to all confidential communications made to an attorney during preliminary discussions of the prospective professional employment, as well as those made during the course of any professional relationship resulting from such discussions"].) Thus, for purposes of the attorney-client privilege analysis, there is no basis to distinguish between class members who retained plaintiffs' counsel and those who did not.

 However, as plaintiffs recognize, "[i]t is well established that the attorney-client privilege, designed to protect communications between them, does not ordinarily protect the client's identity." (*Hays v. Wood* (1979) 25 Cal.3d 772, 785 [160 Cal.Rptr. 102, 603 P.2d 19].) It is true that limited exceptions to this general rule have been recognized. One exception has been recognized "in cases wherein known facts concerning an attorney's representation of an anonymous client implicate the client in unlawful activities and disclosure of the client's name might serve to make the client the subject of official investigation or expose him to criminal or civil liability." (*Ibid.*) In this case, plaintiffs make no effort to show that this exception applies. Disclosing the names of class members who contacted plaintiffs' counsel will not implicate them in any unlawful activity and will not expose them to criminal or civil liability.

"Another recognized exception arises where known facts regarding an attorney's representation are such that the disclosure of the client's identity would betray personal, confidential information regarding the client." (*Hooser, supra,* 84 Cal.App.4th at p. 1005.) This situation arose in *Rosso, supra,* 191 Cal.App.3d 1514, a case upon which plaintiffs rely. In *Rosso,* a woman responded to a law firm's advertisement directed toward women who might have suffered problems arising from use of the Dalkon Shield intrauterine device. After communicating with the woman for some

time, the law firm decided not to represent her, and it sent her a letter suggesting she contact another attorney if she wished to pursue the case and recommending that she do so quickly because of time limits that may have been applicable. Sometime thereafter, the woman retained another firm, which filed an action on the woman's behalf against the firm that had placed the advertisement and one of its partners, claiming they had missed the statute of limitations. In discovery, the plaintiff requested that the defendants produce a master list of their Dalkon Shield cases. After the defendants objected on relevance and attorney-client privilege grounds, the trial court granted plaintiff's motion to compel production of the list.

The Court of Appeal granted the defendants' petition for a writ of mandate. After acknowledging the general rule that "the identity of an attorney's clients is not protected by the attorney-client privilege," the court noted that " '[c]ourts in a few jurisdictions have supported the view that in unusual situations, particularly where so much is already known of the attorney-client relationship that to disclose a client's name will betray a confidential communication, the identity of a client may be treated as privileged information.' " (*Rosso, supra*, 191 Cal.App.3d at p. 1518, quoting Annot. (1967) 16 A.L.R.3d 1047, 1053.) The court then explained that "[b]ecause the people who are on the master list of clients have answered an advertisement directed to women who have suffered injury arising from the use of a Dalkon Shield, revealing their names would reveal the nature of a medical problem, ordinarily considered a confidential communication." (*Rosso, supra*, 191 Cal.App.3d at p. 1519.) The court explained that " 'disclosure of the identity of the client in the attorney-client setting usually says nothing regarding the reason for legal counsel or the content of the communication with the attorney . . . .' " (*Ibid.*, quoting *Smith v. Superior Court* (1981) 118 Cal.App.3d 136, 142 [173 Cal.Rptr. 145].) However, in the case before it, "disclosure . . . reveals the problem of the client, [making it] one of the exceptional cases where the identity of the client should be protected." (*Rosso, supra*, 191 Cal.App.3d at p. 1519.)

In this case, disclosing the names of class members who contacted plaintiffs' counsel will not disclose any personal, confidential information. It will disclose only that they are members of a class who may have been denied some employment benefits, a fact already known to Tenet. And while it will also disclose that they contacted plaintiffs' counsel, this fact, in and of itself, would reveal nothing confidential.

Thus, we hold the trial court's discovery order does not violate the attorney-client privilege.

### 5. Compelling Disclosure of the Identities of Class Members Who Contacted Plaintiffs' Counsel Would Violate Their Privacy Rights.

■ "Information that is not protected by statutory privilege may nonetheless be shielded from discovery, despite its relevance, where its disclosure would invade an individual's right of privacy. [Citation.] The right of privacy is an 'inalienable right' secured by article I, section 1 of the California Constitution. [Citation.] It protects against the unwarranted, compelled disclosure of various private or sensitive information regarding one's personal life [citation], including his or her financial affairs [citation], political affiliations [citation], medical history [citation], sexual relationships [citation], and confidential personnel information [citation]." (*Hooser, supra*, 84 Cal.App.4th at pp. 1003–1004.)

In this case, the privacy rights at issue are those of the class members who contacted plaintiffs' counsel.[7]

■ Case law recognizes that compelling disclosure of the identity of persons who consult with counsel implicates their right of privacy. (See *Hooser, supra*, 84 Cal.App.4th at pp. 1005–1007.) Indeed, as noted above, the trial court in this case acknowledged that its order impacts the privacy rights of the class members who contacted plaintiffs' counsel.

Of course, as Tenet emphasizes, "[t]he constitutional right of privacy does not provide absolute protection against disclosure of personal information; rather it must be balanced against the countervailing public interests in disclosure. [Citation.] For example, there is a general public interest in ' " ' "facilitating the ascertainment of truth in connection with legal proceedings" ' " ' [citation] and in obtaining just results in litigation [citation]. . . . If these public interests in disclosure of private information are found to be 'compelling,' the individual's right of privacy must give way and disclosure will be required." (*Hooser, supra*, 84 Cal.App.4th at p. 1004.)

■ "In determining whether disclosure is required, the court must indulge in a 'careful balancing' of the right of a civil litigant to discover relevant facts, on the one hand, and the right of the third parties to maintain reasonable privacy regarding their sensitive personal affairs, on the other. [Citation.] The court must consider the purpose of the information sought, the effect that disclosure will have on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information.

---

[7] A party to an action may assert the privacy rights of third parties. (See *Valley Bank of Nevada v. Superior Court* (1975) 15 Cal.3d 652, 657 [125 Cal.Rptr. 553, 542 P.2d 977]; *Hooser, supra*, 84 Cal.App.4th at pp. 1004, 1006–1007.)

[Citation.] Based on an application of these factors, the more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery that will be required before disclosure will be permitted." (*Hooser, supra,* 84 Cal.App.4th at p. 1004.)

■ In this case, we conclude that the privacy rights of the class members who contacted plaintiffs' counsel outweigh any interest Tenet may have in learning their identity. Tenet offers no compelling need to learn the identities of the class members who contacted plaintiffs' counsel. While it is conceivable some of those who contacted plaintiffs' counsel may have some information about the case (beyond the mere fact that they are members of the class), that is not necessarily the case. First, it appears that most, if not all, of the class members who contacted plaintiffs' counsel did so in response to the neutral letter. That letter did not ask recipients to contact plaintiffs' counsel if they had any relevant information. It merely advised recipients they could contact Joseph Antonelli (whose status as counsel in the case was not even mentioned in the letter) if *they* "would like more information."

Second, Tenet knows the identity of all class members, including the approximately 3,300 who received the neutral letter. It is free to contact class members to determine if they have any information they wish to share.

Third, because Tenet should know how it compensated its employees and whether it provided them with meal and rest breaks, Tenet should be aware of most of the relevant facts in the case.[8]

Thus, withholding the identities of class members who contacted plaintiffs' counsel should not have a significant impact on Tenet's ability to defend itself in the action.

■ On the other hand, the privacy rights of the class members are significant. As the Court of Appeal explained in *Hooser, supra,* 84 Cal.App.4th at pages 1005–1006, "the identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy. '[E]very person [has the right] to freely confer with and confide in his attorney in an atmosphere of trust and serenity . . . .' [Citation.] Clients routinely exercise their right to consult with counsel, seeking to obtain advice on a host of matters that they reasonably expect to remain private. A spouse who consults a divorce attorney may not want his or her spouse or other family members to know that he or she is considering divorce. Similarly, *an employee who is concerned about conduct in his workplace,* an entrepreneur

---

[8] We do not mean to suggest that Tenet has no right to conduct discovery in the case.

planning a new business endeavor, an individual with questions about the criminal or tax consequences of his or her acts or a family member who desires to rewrite a will may also consult an attorney with the expectation that the consultation itself, as well as the matters discussed therein, will remain confidential until such time as the consultation is disclosed to third parties, through the filing of a lawsuit, the open representation of the client in dealing with third parties or in some other manner." (Italics added.)

As the language quoted in the previous paragraph suggests, the degree to which the identity of a client entails sensitive personal information may vary depending on the context. One of the more sensitive contexts is the employment context. Employees may be reluctant to engage in any act their employer may perceive as adversarial for fear of retaliation. Therefore, if employees feel their employer will be informed whenever they contact an attorney suing the employer, many would be deterred from exercising their right to consult counsel.

Tenet notes that the neutral letter specifically advised its recipients that contacting Attorney Antonelli "will not have any negative effect on [their] employment with any Tenet-related facility." Tenet claims that, as a result, the class members had no basis to expect that their identities would remain confidential or to fear retaliation.

We fail to see how the language of the letter somehow implied that the identities of those responding to the letter would be disclosed to Tenet. If anything, the statement in the letter that contacting Antonelli would "not have any negative effect on [their] employment" could be construed by its recipients as an assurance that the contact would not be disclosed to their employer.[9] And while the language of the letter may have had some reassuring effect, it would be naive to believe that the language—which added nothing to what the law already requires—would alleviate all concerns that class members may have had regarding their contact with plaintiffs' counsel.

In sum, we conclude that the privacy rights of the class members who contacted plaintiffs' counsel outweigh Tenet's need for the discovery. For this reason, the trial court should have granted plaintiffs' motion for a protective order.

---

[9] In the future, parties who agree to the technique utilized by the parties in this case would be well advised to make clear in their stipulation or in the letter to class members whether, and under what circumstances, a class member's contact with plaintiffs' counsel may be disclosed to the defendant.

## DISPOSITION

The petition for writ of mandate is granted. The respondent court is directed to vacate its October 4, 2005 order denying plaintiffs' motion for a protective order and to thereafter enter a new and different order granting the motion. Petitioner is entitled to recover his costs in this writ proceeding. (Cal. Rules of Court, rule 56(*l*)(1).)

Rubin, J., and Boland, J., concurred.