IN RE RULE 45 SUBPOENA ISSUED TO JP MORGAN CHASE BANK, N.A., regarding the United States District Court for the District of South Dakota case,

**SPV–LS, LLC, Plaintiff,**

v.

**Transamerica Life Insurance Company, Defendant and Third–Party Plaintiff,**

v.

**Nachman Bergman as Trustee of the N Bergman Insurance Trust dated December 18, 2006, Malka Silberman, as Successor Trustee of The N Bergman Insurance Trust Dated December 18, 2006, Life Trading Trust dated August 8, 2007, T–LEG LLC (a/k/a TLEG LLC), Financial Life Services LLC, SPV II LLC, and The Representative of The Estate of Nancy Bergman, Third–Party Defendants.**

16–mc–416 (JSR) (Part I)

United States District Court, S.D. New York.

Signed December 9, 2016

## MEMORANDUM ORDER

JED S. RAKOFF, United States District Judge

Before the Court is Gerald Kroll's motion to quash a subpoena that SPV–LS, LLC served on JP Morgan Chase Bank, N.A. in connection with a lawsuit pending in the District of South Dakota. Kroll, a California-based attorney, is not a party to that action, but represents one of the parties. The subpoena seeks bank records for Kroll and his law firm, Kroll Law Corporation. Kroll mainly argues that the subpoena impermissibly invades his and his clients' privacy interests; he also raises several arguments more properly belonging to the bank. For the reasons stated below, the Court hereby denies Kroll's motion in its entirety.

The instant proceeding takes place against a complicated background spanning multiple civil actions and miscellaneous proceedings in South Dakota, New York, and California. It appears that in the underlying litigation, three parties are contesting the right to the proceeds of a $10,000,000 life insurance policy taken on the life of Nancy Bergman, who died in 2014: the N Bergman Insurance Trust (the "Trust"), which initially owned the policy; several entities collectively known as "SPV," which currently own the policy; and the Estate of Nancy Bergman (the "Estate").

Kroll represents the Estate in the South Dakota action.

SPV claims that the Estate and the Trust, although technically adverse parties in the South Dakota action, are both funded and controlled by the same group of "investors" seeking to recover the policy proceeds. The Trust has already tried, and failed, to claim the policy in an action in the Eastern District of New York, see generally Fin. Life Servs., LLC v. N. Bergman Ins. Trust, No. 10–4499, ECF No. 53, at 1–10 (E.D.N.Y. Nov. 4, 2016), and SPV argues that the Trust is attempting to litigate it anew in the South Dakota action under false pretenses. SPV also claims that the investors behind the Trust have also allegedly induced the Estate to enter the action, and are funding and controlling it as well.

As detailed below, SPV has already uncovered significant evidence of collusion between the Trust and the Estate, including the fact that an investor in the Trust paid Kroll's $10,000 retainer to represent the Estate. See Declaration of Kelly Foss, Esq. in Opposition to Gerald L. Kroll's Motion to Quash FRCP 45 Subpoena ("Foss Decl.), ECF No. 8, ¶ 27. To obtain further proof of this theory, SPV issued the instant subpoena to JP Morgan for the banking records of Kroll and his law firm. See Subpoena, Ex. 4 to Declaration of Gerald L. Kroll in Support of Motion to Quash Subpoena ("Kroll Decl."), ECF No. 4. Initially, the subpoena sought bank records from May 2009 to the present, but the parties narrowed the time range to October 1, 2014 to the present through the meet- and-confer process. See id.; Memorandum of Law in Opposition to Gerald L. Kroll's Motion to Quash FRCP Subpoena, ECF No. 9, at 1–2.

 Kroll principally argues that the subpoena impermissibly violates his and his clients' privacy interests. The Court is not persuaded. Kroll cites several California state court decisions holding that, in certain circumstances, such privacy interests may place otherwise discoverable documents out of reach. See, e.g., Hooser v. Superior Court, 84 Cal.App.4th 997, 101 Cal.Rptr.2d 341 (2000). But Kroll cites no decisions suggesting that California state privacy interests are

a valid basis to quash a federal subpoena, and for good reason: that is not the law in federal court. Indeed, although Kroll has standing to raise his privacy objections, see Solow v. Conseco, Inc., No. 06–cv–5988, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008), sensitive financial information is generally discoverable in federal court. See Conopco, Inc. v. Wein, No. 05–CV–9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[E]ven the confidentiality of personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action.").

In evaluating privacy objections, some courts "weigh[ ] the relevance or probative value of the documents being sought against the privacy interests," see Solow, 2008 WL 190340, at *4, whereas others simply find that relevant and non-privileged information must be produced. See, e.g., Conopco, 2007 WL 2119507, at *2 ("[T]o the extent that the financial information Plaintiff seeks is relevant, it must be produced."). Here, regardless of whether a bright-line rule or a balancing test applies, Kroll's bank records are discoverable.

To begin with, these records, at a minimum, are plainly relevant to SPV's affirmative defenses of estoppel, unclean hands, and so forth, because they are likely to show the extent to which the Trust investors have funded Kroll, the Estate's attorney. One court already suggested as much when it ordered Kroll to appear for a deposition. See SPV–LS, LLC v. Transamerica Life Ins. Co., No. 16–mc–115, ECF No. 12, at 3 (C.D. Cal. Nov. 15, 2016) ("SPV seeks to prove that investors are controlling and financing the Estate and Trust, the two competing claimants to the Policy proceeds. . . . [T]he information SPV seeks is critical to its ability to argue to the court that one or both of the competing claimants are disqualified from receiving the Policy proceeds.").

Nor is this a "fishing expedition." SPV has already uncovered significant evidence of collusion. Specifically, an investor in the Trust, John "Avram" Simmons, was involved in selecting counsel to represent the Estate in the South Dakota litigation, see Foss Decl. ¶ 20

& Ex. D; paid Kroll's $10,000 retainer after the Estate hired him, see id. ¶ 27 & Ex. I; paid $2,000 (which also found its way into Kroll's account) to have the Estate's representative attend a deposition, see id. ¶ 27 & Exs. J–K; and even paid $90, 000 to satisfy a Medicaid claim against the Estate after Nancy Bergman died, see id. ¶ 29.[1] What's more, SPV obtained a draft retainer agreement in which Kroll was to be paid a contingency fee if either the Estate or the Trust prevailed in the South Dakota action. See id. ¶ 20 & Ex. E.

Against this background, even assuming Kroll's privacy concerns are legitimate, they do not outweigh the probative value of the bank records. Having admitted that he accepted funds from those behind the Trust, Kroll cannot now argue that his bank records, which may show further payments or other signs of collusion, are out of reach. Moreover, any remaining privacy concerns can be substantially addressed through a confidentiality order (see infra). See, e.g., Snider v. Lugli, No. 10–cv–4026, 2011 WL 5401860, at *5 (E.D.N.Y. Nov. 4, 2011); Brassco, Inc. v. Kilpo, No. 99–cv–3014, 2004 WL 1385816, at *3 (S.D.N.Y. June 21, 2004).

Kroll also argues that the subpoena should be quashed because the time for compliance is unreasonably short, because the records sought from the bank could have been obtained from a party, and because the subpoena is an attempted end-run around the discovery deadline in the South Dakota action.

■ With respect to the first objection, "[c]ourts have consistently rejected the position that a party who is not the recipient of a subpoena can nonetheless challenge that subpoena because it creates an undue burden." Malibu Media, LLC v. Doe, No. 15–cv–3147, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016). "[E]ven a defendant's legitimate concerns about the effects of a subpoena have no place within the undue burden calculus, as the burden of literal compliance with [the] subpoena falls to a third-party." Id. (internal

quotation marks omitted). This reasoning applies with equal force to Kroll's argument that JP Morgan's time for compliance is unreasonably short. Such a burden would obviously fall on JP Morgan, which, according to SPV, stands ready to comply as soon as the instant motion is resolved. See Foss Decl. ¶ 53. Kroll therefore lacks standing to make that argument.

■ For the same reasons, Kroll lacks standing to object to JP Morgan's compliance simply because, in his view, SPV could also have obtained the records elsewhere or in a more timely fashion. Nor are any of these arguments persuasive on the merits. Indeed, Kroll's argument about timing is downright ironic given that, even if Kroll's arguments had any merit (which they do not), his motion to quash is untimely, because he filed it almost two months after the subpoena's September 16, 2016 return date and cannot show good cause for this delay. See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding the IP Address 69.120.35.31, No. 08–mc–347, 2010 WL 2219343, at *5–6 (E.D.N.Y. Feb. 5, 2010), report and recommendation adopted in relevant part by 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010). Indeed, it is worse than untimely, because Kroll filed a first motion to quash the instant subpoena in the Central District of California, even though under Rule 45, only the Southern District of New York could hear the motion, see Fed. R. Civ. P. 45(d)(3)(A)–(B); Foss Decl. ¶ 46, and even though SPV promptly pointed out this deficiency, see Foss Decl. ¶¶ 37–51. Only after the California district court duly found it lacked jurisdiction over Kroll's first motion, see SPV–LS, No. 16–mc–115, ECF No. 12, at 1, did Kroll file the instant motion, some two months after the return date. In other words, Kroll himself deliberately caused the delay.

In sum, the motion to quash is hereby denied its entirety, and JP Morgan is directed to promptly comply with the subpoena and produce the records to SPV's counsel.

---

1. Kroll admits that Simmons made these three payments, see Kroll Decl. ¶¶ 15, 37–45, and suggests that he may have done so as a form of charity to the Estate, because he regretted his involvement in obtaining the insurance policy under fraudulent circumstances in the first place. See id. ¶ 40. But SPV need not accept this glib explanation, and it is no basis to oppose the instant subpoena in any event.

Subject to further revision, if appropriate, the bank records so produced will be limited to attorneys'-eyes only. In addition, the parties should make arrangements to permit Kroll to claw back information deemed non-responsive to the issues in the South Dakota action.

The Clerk of the Court is directed to close docket entry number 1 on the docket of this case.

SO ORDERED.