**Ellen BRETT, Plaintiff Below, Appellant,**

v.

**Gerald Z. BERKOWITZ, and Berkowitz, Schagrin, Coonin & Cooper, P.A., Defendants Below, Appelles.**

No. 479, 1996.

Supreme Court of Delaware.

Submitted: Nov. 12, 1997.

Decided: Feb. 27, 1998.

Edward C. Gill, Georgetown, for Appellant.

F. Alton Tybout, of Tybout, Redfearn & Pell, Wilmington, for Appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal we affirm the judgment for defendant entered upon a defense verdict in an action for sexual misconduct and malpractice by a client against a lawyer. We hold that (1) the underlying claims against the lawyer for offensive touching and sexual harassment cannot be based on criminal statutes, although they could be the basis for a claim of intentional tort; (2) plaintiff was properly denied discovery of allegations of sexual misconduct with other clients of defendant; and (3) the Superior Court properly excluded testimony of a legal malpractice expert who was not familiar with the standard of care required of lawyers in the State of Delaware.

### Facts

After her divorce in 1988, Ellen Brett hired Gerald Z. Berkowitz, Esquire to represent her before the Family Court with respect to ancillary matters. Berkowitz represented Brett from August 1989 through March 1991, whereupon Brett fired Berkowitz and filed a civil suit against him and the firm of Berkowitz, Schagrin, Coonin & Cooper, P.A. Brett alleged sexual misconduct and legal malpractice. She claimed that, over the course of her attorney-client relationship with Berkowitz, he rubbed her thigh, kissed her against her will and repeatedly suggested that they sleep together, all in violation of criminal statutes 11 *Del.C.* §§ 601 and 763(2).[1] Brett's legal malpractice claims were based on allegations that Berkowitz failed to advise her of a possible claim against her former husband for damages from physical abuse, and that Berkowitz negligently handled matters concerning property division.

The discovery issue involved two interrogatories, by which Brett requested information relating to other clients, and a related deposition inquiry. The interrogatories were as follows:

3. Provide the names and addresses of all clients who defendant Berkowitz has had any type of sexual contact with or who have made a complaint of any sexual contact regarding defendant Berkowitz.

---

1. 11 *Del.C.* § 601 provides that "[o]ne is guilty of offensive touching when one intentionally touches another person, either with a member of one's body or with any instrument, knowing that one is thereby likely to cause offense or alarm to such other person."

Under 11 *Del.C.* § 763(2), a person is guilty of the misdemeanor of sexual harassment when "[t]he person suggests, solicits, requests, commands, importunes or otherwise attempts to induce another person to have sexual contact or sexual intercourse or unlawful sexual penetration with the actor, knowing that the actor is thereby likely to cause annoyance, offense or alarm to that person."

4. State all occasions on which any shareholders or partners of defendant law firm had any indication that defendant Berkowitz was having any type of sexual contact with any of his clients.

The defendants objected to and refused to answer both interrogatories. In Berkowitz' deposition, he refused to answer a series of questions concerning sexual relations with clients, claiming that they were beyond the scope of discovery.[2] Plaintiff then filed a motion to compel answers to the interrogatories and deposition questions. Citing Superior Court Civil Rule 26(b)(1), plaintiff argued that such discovery had the potential to uncover other admissible evidence. Further, she argued that the evidence itself was admissible under Delaware Rules of Evidence 404(b) and 406.

### Disposition in the Superior Court

In determining whether the information sought was relevant to Brett's claims, the court ruled as a threshold matter that Brett did not have a private cause of action under the criminal statutes for offensive touching and sexual harassment. Instead, the court determined that her claim was one of intentional infliction of emotional distress.

The Superior Court found that information concerning Berkowitz' alleged relations with other clients was relevant to the issue of whether he sought sex from Brett. Nevertheless, noting that the disclosure requested by Brett was unique in that it implicated the substantial privacy interests of third parties, the court denied the motion to compel on the ground that the discovery was neither admissible nor reasonably calculated to lead to the discovery of admissible evidence.[3]

2. Berkowitz later denied that it was his habit or routine to seek personal relations with clients.

3. *Brett v. Berkowitz*, Del.Super., C.A. No. 91C–12–251, 1995 WL 270146 (Apr. 13, 1995) (Mem. Op.).

4. *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *Young v. Joyce*, Del.Supr., 351 A.2d 857, 859 (1975).

5. *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979).

At trial, the Superior Court excluded the testimony of plaintiff's legal malpractice expert, Neil Hurowitz, and consequently directed a verdict in favor of the defendants as to both legal malpractice claims. The jury ruled in favor of defendants on the intentional infliction of emotional distress claim.

### The Nature of Plaintiff's Claim

■ Resolution of the issue of what constitutes allowable discovery requires first and foremost a determination concerning the nature of plaintiff's action. We agree with the Superior Court's ruling that plaintiff may not rely on criminal statutes relating to offensive touching and sexual harassment as a source of her private cause of action in this case.

■ A statutory private remedy will be available only if legislative intent to provide such a remedy is present.[4] A statute does not grant a private cause of action simply because the statute has been violated and a person harmed.[5] Our task here is one of statutory construction limited solely to determining whether or not the General Assembly intended to create the private right of action asserted by Brett.[6] When a statute does not expressly create or deny a private remedy, the issue is whether or not the requisite legislative intent is implicit in the text, structure or purpose of the statute.[7]

■ Sections 601 and 763(2) of Title 11 provide criminal penalties for offensive touching and sexual harassment. But neither statute explicitly provides for a private right of action, and we can find no implicit evidence that the General Assembly intended to create such a right. In some cases, the intent to create a private remedy may be inferred where a statute was obviously enacted for the protection of a designated class of individuals.[8] Here, both statutes impose

6. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979).

7. *See Thompson*, 484 U.S. at 179, 108 S.Ct. at 516.

8. *See Young*, 351 A.2d at 859 (holding that, with respect to the consumer fraud statute, the legislature's explicit designation of consumers as the persons to be protected under the statute evi-

general prohibitions. This suggests that the statutes were enacted, not to create rights for a particular group of citizens, but to protect the public at large. The penal focus of Sections 601 and 763(2) cannot be stretched to include civil redress for personal damages.[9] Accordingly, we affirm the Superior Court's ruling that plaintiff's claim, if properly stated, would be for the tort of intentional infliction of emotional distress, and cannot be based on the criminal statutes asserted here.

### The Proper Scope of Discovery

■ Intentional infliction of emotional distress may warrant a damages remedy in the absence of accompanying bodily harm, provided there is a showing of severe emotional distress caused by extreme and outrageous conduct.[10] The issue presented is whether or not the interrogatories and deposition questions fell within the liberal parameters of allowable discovery under Superior Court Rule 26(b).[11]

■ The information that Brett requested concerning Berkowitz' alleged relations with other clients was relevant to the issue of whether or not he behaved toward Brett in a sexually inappropriate manner.[12] Relevancy is a crucial test in determining the propriety of requested discovery under Rule 26(b), but it is not sufficient in cases where the discovery is otherwise objectionable on the ground that (1) it involves privileged subject matter

or (2) it is neither admissible nor likely to lead to the discovery of admissible evidence.

### The Attorney–Client Privilege

Brett seeks discovery of sensitive information concerning Berkowitz' relationships with former clients who are not parties to this litigation. Under the unique circumstances of this case, the mere disclosure of client identity betrays information that is usually the substance of confidential attorney-client communication. Compelling the information requested would improperly contravene the attorney-client privilege.

The Superior Court correctly analyzed Brett's discovery request from two separate but interrelated perspectives. First, the Superior Court examined Brett's initial right to discover the names of a lawyer's other clients. Second, the Superior Court considered whether, if discovery of the names of Berkowitz' clients had revealed or led to evidence of similar relationships with other clients, such evidence would be admissible at the trial on the merits.

■ The main purpose behind the attorney-client privilege is "to promote freedom of consultation of legal advisers by clients."[13] Delaware's attorney-client privilege is set forth in Section 502 of the Delaware Uniform Rules of Evidence. The general rule of the privilege is that:

9. denced a clear legislative intent to allow private causes of action for statutory fraud); *see also Lock v. Schreppler*, Del.Super., 426 A.2d 856, 864–66 (1981) (holding that there was no legislative intent to create a statutory remedy where a statute designated no specific group of persons to protect and articulated no purpose other than regulation and licensing); *Heller v. Dover Warehouse Market, Inc.*, Del.Super., 515 A.2d 178, 180–81 (1986) (holding that allowing a private cause of action promoted the policy of Delaware's anti-polygraph statute, which was enacted to protect the class of employees from being subjected unfairly to polygraph tests).

9. *See Callaway v. N.B. Downing Co.*, Del.Super., 172 A.2d 260, 262 (1961) ("[A] statute wholly penal in nature will not support a civil remedy.").

10. *Cummings v. Pinder*, Del.Supr., 574 A.2d 843, 845 (1990).

11. Super.Ct.Civ.R. 26(b) provides in pertinent part as follows:

(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

12. *See* D.R.E. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

13. 8 Wigmore, *Evidence* § 2291 (McNaughton rev. 1961).

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself or his representative and his lawyer or his lawyer's representative. . . .[14]

The privilege can be asserted by the client or by the lawyer acting on the client's behalf.[15]

■■■ As a general rule, the client's identity is incidental to the attorney-client relationship. Therefore, it is not usually protected from discovery under the attorney-client privilege.[16] Some courts protect the identities of clients in any case where the client whose identity is sought is not a party to the litigation.[17] Moreover, protecting the identities of non-party clients has an important effect in preserving the flow of communication that underlies the attorney-client privilege.[18]

The information requested by Brett necessarily requires that the identity of Berkowitz' former clients be discovered. The privacy interests of persons who are not parties to this litigation should not be invaded, and we should not risk chilling the free flow of communication that the attorney-client privilege is designed to foster.

■■■ A client's identity is privileged information in exceptional cases: (1) where revealing the identity would provide the "last link" in the chain of evidence leading to the conclusion that the client had committed a crime and (2) where the revelation of the client's identity would simultaneously reveal "confidential communications" between the lawyer and client.[19]

The "last link" exception originated in the Ninth Circuit case of *Baird v. Koerner.*[20] It is typically applied in situations where a client has been involved in wrongdoing that has attracted the attention of regulatory or law enforcement officials, but where the client's identity is unknown to those officials. The lawyer refuses to reveal the identity of the client because doing so may cause criminal charges to be brought against the client. Hence, the lawyer's identification is the "last link" necessary to inculpate the client in a crime. Accordingly, it has been held that, in "last link" situations, the client's identity is protected by the attorney-client privilege.[21]

The second established exception to permitting the disclosure of the client's identity is essentially an application of the privilege as enumerated in the rules of evidence. According to this "confidential communication" exception, "in unusual situations, particularly where so much is already known of the attorney-client relationship that to disclose a client's name will betray a confidential communication, the identity of a client may be treated as privileged information."[22]

---

**14.** D.R.E. 502(b). Although there are recognized exceptions to the privilege, they are inapplicable in this proceeding. *See* D.R.E. 502(d).

**15.** D.R.E. 502(c).

**16.** 1 *McCormick on Evidence* § 90 (3d ed. 1984).

**17.** *See Matter of Jacqueline F.,* 47 N.Y.2d 215, 417 N.Y.S.2d 884, 887–88, 391 N.E.2d 967, 970 (1979) (holding that, absent other circumstances, a lawyer "cannot be compelled to reveal a client's identity where the latter is not a party to a pending litigation").

**18.** *Compare Weisbeck v. Hess,* S.D.Supr., 524 N.W.2d 363, 365 (1994) (psychologist of plaintiff's wife not required to disclose names of non-party clients, based on mere suspicion that such information may possibly contain relevant evidence, on ground that releasing names of these clients would directly discourage uninhibited communication).

**19.** 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 1.6:105, at 149.

**20.** 9th Cir., 279 F.2d 623 (1960).

**21.** In *Baird,* a client with overdue taxes for past years made current tax payments to the IRS anonymously through his attorney. When the IRS sought the client's identity, the attorney refused to reveal it. The Ninth Circuit held that the client's identity was protected by the privilege because, otherwise, the information would provide the "link that could form the chain of testimony necessary to convict." *Baird v. Koerner,* 279 F.2d at 633.

**22.** *Rosso, Johnson, Rosso & Ebersold v. Superior Court,* 191 Cal.App.3d 1514, 237 Cal.Rptr. 242, 244 (1987).

In the instant case, Berkowitz is engaged in a general practice that includes the practice of domestic relations law. Brett's allegations stem from Berkowitz' representation of her in a divorce proceeding. In a reply brief submitted to the Superior Court in support of the motion to compel, Brett's counsel represented the following:

> What Plaintiff will show is a unique arrangement. Plaintiff will demonstrate through this evidence that the Defendant was in a position of trust with each of the women involved. He took each of these women in a particularly vulnerable position in their lives, when they were going through a divorce. He took their representation through either a very small or no monetary retainer fee. He would then obtain liens on their property, which property would necessarily also be property in which the opposing spouse would have an interest. The victims would then be placed in an extremely vulnerable position. As Defendant Berkowitz' representation of [these women] moved along and they became more dependent on him he would sexually harass his clients and move them towards a full sexual situation.
>
> Plaintiff also expects not to show that this occurred one, two or ten times, but in fact the numbers are expected to be staggering. This conduct of Defendant Berkowitz did go so far as to become a routine and habit and common place. * * *
>
> * * * Plaintiff expects to show that this conduct was well known to other members of the Defendant's law firm. Plaintiff expects to show that they either turned a blind eye to this or treated it as a joking type matter. In any event, they did nothing to attempt to correct this ongoing situation.[23]

In the context of Brett's request for disclosure, the mere revelation of the names of women whom Berkowitz represented would reveal the confidential communication that these female clients were seeking advice concerning a divorce.

Matters involving divorce and domestic relations law are private concerns. Those involved may wish to keep confidential both the fact that they are involved in such matters and the information necessarily disclosed in the pursuit thereof. This privacy concern is evidenced by the safeguards followed in the Family Court regarding the general prohibition against the public disclosure of its records.[24]

Given the domestic relations emphasis of Berkowitz' law practice and the context of Brett's inquiry, compelling the answers at issue here would divulge facts that Berkowitz' other clients intended to keep confidential. The revelation of client identities in response to Brett's request for discovery would disclose simultaneously that those female clients were either considering divorce or in need of advice in a domestic relations matter. Because of the privacy interests of clients seeking advice in those areas, the disclosure of their identities would be a violation of the attorney-client privilege.

### Delaware Rules of Evidence 404(b) and 406

The requested discovery in this case was objectionable on the additional ground that it was neither admissible nor likely to lead to the discovery of admissible evidence. Plaintiff asserts that the contested interrogatory and deposition questions were directed toward confirming Berkowitz' relationships with third party clients and toward discovering "additional witnesses who will testify to

---

**23.** *See* page 4 of the Superior Court's Memorandum Opinion quoting from plaintiff's reply brief. These are troubling allegations. Although we express no opinion on their validity, we are mindful that regulation of the Bar is a responsibility of this Court that is independent of the outcome of this civil proceeding. Nothing contained herein: (a) should be construed as condoning improper sexual conduct by a lawyer with a client; or (b) would preclude the filing of a complaint with the Office of Disciplinary Counsel by these other clients of defendant Berkowitz

alleging a violation of the Delaware Lawyers' Rules of Professional Conduct arising out of the various allegations asserted in this record. *See, e.g.,* Rules 1.7(b), 1.8(b), 1.14(a), 2.1, 8.4(b) and 8.4(d). We express no opinion, however, concerning the application of such rules or the outcome of any such complaint to Disciplinary Counsel if one were to be made.

**24.** *See* Fam.Ct.Civ.R. 90.1, 90.2; Fam.Ct.Crim.R. 62, 63; *see also* 13 *Del.C.* § 815–818, 929, 1112.

same." The disclosure requested by plaintiff was not calculated to lead to the discovery of information different in nature from the information actually sought. Accordingly, we focus our inquiry on the admissibility of the evidence that was the subject of Brett's motion to compel.

Brett argues that evidence of Berkowitz' prior sexual advances toward his clients is admissible under Delaware Rules of Evidence 404(b) and 406.[25] Because the operation of these rules is limited to specified circumstances, we review the application of each to this particular case. Rule 404(b) allows for the admissibility of "other wrongs or acts" in civil cases for purposes *other* than to show propensity.[26] The key to whether or not evidence of other acts is admissible under the enumerated purposes of Rule 404(b) lies in the relationship that such evidence has to the ultimate fact or issue in the trial.[27] For example, if an ultimate fact (such as identity or mistake) has been placed in issue, evidence of similar conduct toward other persons may be offered to disprove such contentions.[28]

Brett argues that evidence of Berkowitz' relations with previous clients is admissible under Rule 404(b) as relevant to her claim for an intentional tort to show motive, intent, plan and absence of mistake or accident. The various purposes for which Brett offers this evidence, however, do not speak to the issues at hand, as defined by the nature of her claim and the circumstances of this case.

Plaintiff's claim raises the following concerns: (1) the nature of Berkowitz' behavior; (2) whether or not his behavior was intentional; and (3) the severity of Brett's reac-

tion. Whether or not Berkowitz had motives of sexual gratification or establishing power over his clients is irrelevant to such concerns. Furthermore, to the extent Brett is able to establish Berkowitz' behavior toward her, the requisite intent may be inferred from that behavior, and "no evidential purpose is served by proof that the defendant committed other intentional [acts] of the same type."[29]

■ Similarly, any alleged evidence that Berkowitz had prior relations with other clients is not admissible to prove the presence of a plan or scheme within the meaning of Rule 404(b). For prior acts to form part of a common plan, they must be so related to the present conduct as to be crucial to a full understanding of that conduct.[30] Mere repetition of sexual behavior is not evidence of a plan or scheme and may not be admitted under that exception.[31] Finally, Berkowitz is not contending that his conduct resulted from mistake or accident. Thus, those elements are not in issue. In light of the nature of Brett's cause of action, the evidence she sought in her motion to compel does not fit any proffered exception in Rule 404(b). Instead, the evidence falls squarely within the category of prohibited character evidence. Accordingly, we hold that plaintiff's motion to compel was properly denied with respect to her claim of intentional infliction of emotional distress.

Brett also argues that evidence of Berkowitz' prior relations with clients is admissible under Rule 406 on the ground that it constitutes habit. We find that this argument misconstrues the nature of habit evidence. To be probative, evidence presented under

---

**25.** D.R.E. 404(b) provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Under D.R.E. 406, "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

**26.** *Mercedes–Benz v. Norman Gershman's Things to Wear, Inc.,* Del.Supr., 596 A.2d 1358, 1365 (1991); *Getz v. State,* Del.Supr., 538 A.2d 726, 730 (1988).

**27.** *Getz,* 538 A.2d at 731.

**28.** *Id.*

**29.** *Id.* at 733.

**30.** *Id.*

**31.** *Id.*

Rule 406 must consist of specific, "semi-automatic" conduct that is capable of consistent repetition.[32] Berkowitz' alleged sexual behavior toward his clients, in that it entails some amount of judgment and decisionmaking, is too complex and is susceptible to too much variation to qualify as habit evidence. Insofar as Berkowitz' alleged prior conduct is being presented to show that he acted in conformity with a certain character, it is inadmissible under Rule 404(b).[33]

### Punitive Damages

The information requested by Brett does not fall within the parameters of allowable discovery under Rule 26(b) with respect to her claim for intentional tort. Certain cases evidencing willful misconduct and reckless disregard on the part of a tortfeasor may warrant an award of punitive damages. In some circumstances, the reckless indifference necessary for such an award "also may be inferred from evidence of the defendant's prior behavior toward persons not the eventual plaintiff." [34] Although there are cases in which evidence of a defendant's prior behavior toward other persons is relevant and discoverable with respect to the issue of punitive damages, this is not such a case.

In light of our decision here that the requested information would impermissibly reveal the identity of nonparty clients and allow inferences that are normally the subject of confidential communications, the discovery requested by Brett was privileged and properly disallowed by the Superior Court for purposes of punitive damages as well as for purposes of the underlying claim.[35]

### The Exclusion of Brett's Expert Witness

■ Plaintiff's final issue on appeal concerns the exclusion of the testimony of her legal malpractice expert. In medical malpractice cases, Delaware statutory and case law have required that expert witnesses be familiar with the applicable standard of care in the locality where the alleged malpractice occurred.[36] Plaintiff argues that, in the absence of an analogous statute addressing expert witnesses and legal malpractice claims, the Superior Court erred by excluding the testimony of Neil Hurowitz on the ground that Hurowitz, despite his substantial experience and credentials, was not sufficiently familiar with the standard of care required of lawyers in the State of Delaware.

■ The requirement that an expert witness be familiar with community standards in medical malpractice cases is founded on the desire to eliminate "wandering experts" who testify in mercenary fashion.[37] Although competency requirements are not designed to preclude all testimony from out-of-state experts, expert witnesses must be "well acquainted or thoroughly conversant" with the degree of skill ordinarily employed in the local community.[38] In cases where an expert is familiar with a different locality where the standard of care is identical to that observed in the relevant Delaware locality, another expert may provide bridging testimony to reconcile the two standards.[39]

■ We hold that the policies underlying the requirement that medical malpractice experts be competent to testify concerning the

---

**32.** *Weil v. Seltzer*, D.C.Cir., 873 F.2d 1453, 1460 (1989); *Simplex Inc. v. Diversified Energy Systems*, 7th Cir., 847 F.2d 1290, 1293–94 (1988).

**33.** *See DuPont v. Pressman*, Del.Supr., 679 A.2d 436, 448 (1996) (holding that employees' testimony that supervisor had retaliated against other workers was inadmissible character evidence).

**34.** *Strauss v. Biggs*, Del.Supr., 525 A.2d 992, 999 (1987) (citing *Cloroben Chemical Corp. v. Comegys*, Del.Supr., 464 A.2d 887 (1983)).

**35.** Again, we note that this information is troubling and could be the subject of disciplinary proceedings independent of this civil action. *See supra* note 23.

**36.** 18 *Del.C.* §§ 6801(7), 6854; *McKenzie v. Blasetto*, Del.Supr., 686 A.2d 160, 162–63 (1996).

**37.** *Loftus v. Hayden*, Del.Supr., 391 A.2d 749, 752 (1978).

**38.** *Id.* at 752; *see also DiFilippo v. Preston*, Del. Supr., 173 A.2d 333 (1961); 18 *Del.C.* § 6801(7) (a health care provider will be subject to liability for malpractice when he or she fails to observe the "degree of skill and care ordinarily employed, under similar circumstances, by members of the profession in good standing in the same community or locality").

**39.** *McKenzie*, 686 A.2d at 163.

standard of skill and care ordinarily employed in the relevant community apply equally to experts in legal malpractice cases.[40] Here, the Superior Court ruled that Hurowitz' knowledge of Delaware law did not automatically provide the requisite familiarity with the standard and degree of skill applicable to Delaware lawyers. In the absence of any showing of such familiarity, and without bridging testimony to harmonize the standard of care in Hurowitz' locality with that of Delaware, we hold that the expert testimony was properly excluded.

### Conclusion

The judgment of the Superior Court is affirmed.

---

**40.** It makes no difference that the medical malpractice law regarding such testimony is codified by statute. The common law principle of exclusion underlying the statutory policy is applicable in the legal malpractice context.