# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JESSICA MIDDLETON, and )
WILLIAM MIDDLETON, Husband )
and Wife, )
           )
           Plaintiffs, )
           )
       v. )    C.A. No.: N18C-03-120 VLM
           )
KHAN OBSTETRICS AND )
GYNECOLOGY ASSOCIATES, )
P.A., and NASREEN KHAN, D.O., )
           )
           Defendants. )

## ORDER

Submitted: May 26, 2021
Decided: July 16, 2021

*Upon Consideration of Plaintiffs' Motion in Limine on Comparative Negligence,*

## GRANTED;

*Upon Consideration of Defendants' Motion in Limine on Admissibility of Smoking Evidence,*

## DENIED.

Timothy E. Lengkeek, Esquire of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware. *Attorney for Plaintiffs.*

Stephen J. Milewski, Esquire of White and William, LLP, Wilmington, Delaware. *Attorney for Defendants.*

**MEDINILLA, J.**

1

**AND NOW TO WIT**, this 16th day of July, 2021, upon consideration of two motions: Plaintiffs Jessica and William Middleton's Motion to Exclude Comparative Negligence and Defendants Khan Obstetrics and Gynecology Associates, P.A. and Nasreen Khan, D.O.'s (collectively "Defendants") Motion on the Admissibility of Smoking Evidence, the parties' responses and supplements to the motions, oral argument, and the record in this case, **IT IS HEREBY ORDERED** that Plaintiffs' Motion is **GRANTED** and Defendants' Motion is **DENIED.**

## Factual and Procedural History

1.  Defendant Dr. Nasreen Khan was Jessica Middleton's obstetrician and gynecologist and was aware that Mrs. Middleton had two previous preterm deliveries.[1] On the morning of July 15, 2016, Plaintiff Jessica Middleton was 27 weeks pregnant when she began experiencing bleeding from her cervix.[2] At 7:08 a.m., her husband, William, called Dr. Khan's office and left a message on the answering service that his wife was experiencing bleeding.[3] Dr. Khan returned the call at approximately 7:10 a.m.[4] and, while she was physically present at Kent General Hospital during the call,[5] offered instruction to Mrs. Middleton. At 7:58 a.m., William directly called Dr. Khan to report continued bleeding from the cervix

---

[1] Complaint, D.I. 1, ¶ 7.
[2] *Id.* ¶¶ 7-8.
[3] *Id.* ¶ 8.
[4] *Id.* ¶ 9.
[5] *Id.* ¶ 10.

and pain,[6] and Dr. Khan again instructed Mrs. Middleton. At the heart of this dispute is what directive was given by the doctor to her patient during this call, and whether Mrs. Middleton followed such directive.

2.    Plaintiffs claim that Dr. Khan instructed them to go to her office when it opened,[7] while Defendants claim that Mrs. Middleton was directed to go to labor and delivery, but that Mrs. Middleton declined.[8] Whatever the instruction, the parties agree that Mrs. Middleton first reported to Dr. Khan's office between 8:30 and 9:00 a.m.[9]

3.    At Dr. Khan's office, Plaintiffs claim Dr. Khan obtained a fetal heartbeat upon their arrival.[10] At approximately 9:30 a.m., an emergency 9-1-1 call was placed for Mrs. Middleton,[11] with EMT's arriving ten minutes later.[12] Plaintiffs arrived at Kent General Hospital at approximately 9:53 a.m.[13] A maternal and fetal physician noted evidence of a placental abruption and a dead fetus, and Mrs. Middleton was admitted for an emergency cesarean section.[14] At 10:16 a.m., Mrs.

---

[6] Complaint, ¶ 11.

[7] *Id.*

[8] Defendants' Response to Plaintiffs' Omnibus Motion *in Limine*, D.I. 69, at 3.

[9] *See* Complaint, ¶ 14; Answer, D.I. 6, ¶ 14.

[10] Complaint, ¶¶ 15-16.

[11] *Id.* ¶ 17.

[12] *Id.* ¶ 18.

[13] *Id.* ¶ 19.

[14] *Id.* ¶¶ 22-23.

Middleton delivered the dead fetus.[15] An autopsy conducted on July 19, 2016, determined that the cause of death was placental abruption.[16]

4.     On March 14, 2018, Plaintiffs filed this action against Defendants claiming that Dr. Khan was negligent for failing to refer and evaluate Mrs. Middleton at the labor and delivery unit of Kent General Hospital, instructing her to report to Dr. Khan's offices, and failing to obtain informed consent.[17]

5.     On May 29, 2020, Plaintiffs filed an Omnibus Motion *in Limine*, to include, among other applications, what is now this Motion to Exclude Comparative Negligence.[18] On April 30, 2021, during oral arguments, an ancillary issue arose as to whether Mrs. Middleton's smoking history would be otherwise admissible regardless of how the Court ruled as to the availability of a comparative negligence defense. The Court granted Defendants' request to offer their supplement, submitted on May 18, 2021, followed by Plaintiffs' submission on May 26. These matters are ripe for decision.

---

[15] Complaint, ¶ 23.
[16] *Id.* ¶¶ 26-28.
[17] *Id.* ¶ 29.
[18] At a pre-trial conference on November 13, 2020, Mrs. Middleton's smoking history while pregnant became the basis for arguing comparative negligence. Additional briefing was deemed appropriate, and a second oral argument was held on April 30, 2021.

## Contentions

6.      Plaintiffs argue that the jury's task will be to determine whether Dr. Khan acted appropriately in treating the impending placental abruption, not what caused it.[19] As such, they argue that comparative negligence is not available to Defendants and seek exclusion of all references to Mrs. Middleton's smoking, alleged drug use, and refusal to take prescribed medication to prevent premature delivery.[20]

7.      Defendants agree that while there are no objective means of determining what caused the placental abruption in this case, cigarette smoking cannot be excluded as a causal factor.[21] Defendants argue that they should be permitted to argue that Dr. Khan engaged in a continuous course of treatment to ensure that complications with the pregnancy would be avoided, and as such, a jury should be allowed to consider evidence of Mrs. Middleton's smoking and her failure to take prescribed medications as ordered by Dr. Khan.[22] Defendants also argue that Mrs. Middleton's failure to follow directions in the past is relevant to the factual

---

[19] Plaintiff's Omnibus Motion *in Limine*, D.I. 55, at 2.

[20] *Id.* During oral arguments, it became unclear whether the parties wished for the Court to rule on the admissibility of Mrs. Middleton's alleged drug use and refusal to take prescribed medication to prevent premature delivery. Therefore, the Court only considers Mrs. Middleton's smoking history in this ruling.

[21] Defendants' Response to Plaintiffs' Omnibus Motion *in Limine*, at 2.

[22] Defendants' Supplemental Response to Plaintiffs' Motion *in Limine* on Comparative Negligence and Defendants' Motion on the Admissibility of Plaintiffs' Smoking History, D.I. 112, at 4 [hereinafter Defs.' Supplemental Response].

dispute about whether she also failed to follow Dr. Khan's instructions to go to the labor and delivery unit and instead presented to the OBGYN office.[23] Both parties cite to *Ragnis v. Myers*[24] in support of their contentions.[25] No other authority was provided.

**Discussion**

8.     Delaware courts have held that comparative negligence may be asserted in cases of medical negligence where it is factually appropriate.[26] "[E]ach case must be examined on its own facts."[27] To assert a comparative negligence defense, a plaintiff's negligence must have: (1) "been an active and efficient contributing cause of injury," (2) "'cooperated' with the doctor's medical negligence," (3) "entered into [the] proximate cause of [plaintiff's] injury," and (4) "been an element in the transaction on which the medical negligence is based."[28] Yet "[i]f there is a discrete, specific and identifiable moment or act of claimed medical negligence, such as going to an emergency room for a condition or treatment, the defense is inapplicable, even if that patient has ignored prior physician advice."[29]

---

[23] Defendants' Response to Plaintiffs' Omnibus Motion in *Limine*, at 3-4.
[24] 62 A.3d 1225 (Del. Super. 2012).
[25] *See* Defs.' Supplemental Response, at 4.
[26] *Nutter v. Christiana Care Health Servs. Inc.*, 2014 WL 1760342, at *1 (Del. Super. Apr. 28, 2014).
[27] *Ragnis v. Myers*, 62 A.3d 1225, 1232 (Del. Super. 2012).
[28] *Id.* at 1231 (citing *Jensen v. Archbishop Bergan Mercy Hospital*, 459 N.W.2d. 178, 186 (Neb. 1990)).
[29] *Id.*

9.      Defendants' basis for following *Ragnis* is misplaced. In *Ragnis*, while the plaintiff claimed a specific date of negligence, the allegations of negligence also included that there had been a five-year history of hypertension that had been ignored by the *Ragnis* defendant.[30]   There, the Court found that evidence of plaintiff's smoking against defendant's advice could be considered for purposes of comparative negligence.[31] This case is different.

10.     Plaintiffs claim a specific identifiable moment of negligence against Defendants. Specifically, that on that July 15th, Dr. Khan was negligent for failing to refer and evaluate Mrs. Middleton at the labor and delivery unit of the hospital and for instructing her to report to the OBGYN office. Accepting the rationale in *Ragnis*, the defense of comparative negligence is inapplicable to this case. Therefore, Plaintiffs' Motion to Exclude Comparative Negligence is **Granted**.

11.     In addition to the comparative negligence defense, Defendants' argument that the smoking history is otherwise admissible on the issue of causation and as habit under Delaware Rule of Evidence ("DRE") 406 is without merit.

12.     On the issue of causation, Plaintiffs do not claim that Defendants caused the placental abruption. And there is no dispute that the abruption caused the fetal death.[32] Yet Defendants argue the smoking history is a factor that should be

---

[30] *See Ragnis*, 62 A.3d at 1231 n.33.
[31] *Id.* at 1231.
[32] Defs.' Supplemental Response, at 1.

considered by the jury to establish that any delay in treating Mrs. Middleton would not have changed the outcome in this case. To do so, Defendants' experts are expected to establish that the fetal death occurred before or around the time Plaintiffs called Dr. Khan at 7 a.m.[33] prior to Dr. Khan's involvement that day.

13. Though Defendants rely on their expert, David Schwartz, M.D., for his opinion that the abruption was caused due to smoking, Defendants point to nothing in Dr. Schwartz's testimony that establishes that the smoking is relevant to proving the timing of the abruption.[34] As such, they cannot show why Mrs. Middleton's smoking, even if it was the cause of the abruption, establishes that the fetal death occurred prior to or at approximately the same time as the July 15th morning phone call between the parties.

14. As such, where the cause of the placental abruption is not at issue in this case, Defendants may not introduce the evidence of Mrs. Middleton's smoking on the issue of causation. Defendants may argue that the placental abruption occurred and caused the fetal death prior to the phone call with Dr. Khan, they just cannot use evidence of smoking to do so.

15. Lastly, Defendants argue that the smoking history is admissible as evidence of habit under DRE 406 to establish Mrs. Middleton's habit of failing to

---

[33] Defs.' Supplemental Response, at 1-2.
[34] *See id.*

follow Dr. Khan's advice.[35]  Specifically, that Mrs. Middleton's habit of smoking half a pack of cigarettes a day during her pregnancy establishes that she had a habit of ignoring medical advice which should be admissible to show how she acted on a particular occasion.

16.    Under DRE 406, "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit or routine practice."[36]  To be admissible, "evidence presented under Rule 406 must consist of specific, 'semi-automatic' conduct that is capable of consistent repetition."[37]  Habit "denotes one's regular response to a repeated situation."[38]  It "is the person's regular practice of responding to a particular kind of situation with a specific type of conduct."[39]

17.    While the Court agrees that smoking half a pack of cigarettes a day establishes a habit of smoking, it does not establish that she had a regular, "semi-automatic" practice of ignoring all of Dr. Khan's advice or even most of it, or to show how she acted on the morning of July 15th when she spoke to Dr. Khan.  One instance of ignoring a specific directive is not enough to establish a habit which

---

[35] Defs.' Supplemental Response, at 4-5.

[36] D.R.E. 406.

[37] *Brett v. Berkowitz*, 706 A.2d 509, 516-17 (Del. 1998) (citing *Weil v. Seltzer*, D.C. Cir., 873 F.2d 1453, 1460 (1989); *Simplex Inc. v. Diversified Energy Systems*, 7th Cir., 847 F.2d 1290, 1293-94 (1988)).

[38] 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 195 (8th ed. 2020).

[39] *Id.*

would tend to show that Mrs. Middleton acted in conformity on a particular occasion. Evidence of Mrs. Middleton's smoking is not admissible to show that she had a habit of ignoring medical advice. Defendants' Motion on the Admissibility of Smoking Evidence on causation and as habit under DRE 406 is **DENIED**.

18. The Court notes, however, that this ruling does not preclude the possibility that such evidence could be used for the purposes of impeachment, if appropriate, or for purposes of allowing the named experts in this matter to rely on this evidence if it formed a basis of their opinions. Without the benefit of a full review of those opinions, this Court cannot broadly exclude evidence of smoking history. These are rulings that must be made at trial. Only then can the Court determine admissibility and conduct the appropriate determinations under DRE 403 to weigh probative value against the danger of unfair prejudice.[40]

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Exclude Comparative Negligence is **GRANTED**, and Defendants' Motion on Admissibility of Smoking Evidence on causation and DRE 406 is **DENIED**.

Vivian L. Medinilla
Judge

---

[40] *See* D.R.E. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").