**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

Submitted: October 22, 2024
Decided:  January 14, 2025

James L. Martin
805 W. 21ˢᵗ Street
Wilmington, Delaware 19802

Jeffrey M. Weiner, Esquire
1332 King Street
Wilmington, Delaware 19801

Re: ***James L. Martin v. Bruce L. Hudson, et al.***
<u>**C.A. No.: N21C-12-195 VLM**</u>

Dear Messrs. Martin and Weiner:

The matter arises from the legal representation of Plaintiff James L. Martin in personal injury litigation that did not resolve as he had hoped.  Martin seeks to "mitigate [those] losses"[1] through this legal malpractice action against Bruce L. Hudson, Esquire ("Hudson"), both "as successor to the late Ben Castle," "as an attorney who purported to represent plaintiff," and Hudson and Castle Law, LLC (together, "Defendants").[2]  Defendants bring challenges to the proffered expert testimony under Delaware Rule of Evidence 702 and further move for summary judgment under Superior Court Civil Rule 56. For the reasons stated below, Defendants' motions are **GRANTED**.[3]

---

[1] Complaint ¶ 47, D.I. 1 (hereafter "Compl.").

[2] *Id.* ¶ 1.

[3] Because these motions are dispositive, the Court does not consider any remaining motions *in limine.*

1

## A. THE UNDERLYING *NIXON* CASE

Martin is not happy with the litigation outcome of a 2015 bicycling accident. Those facts for which he sought representation are relatively straightforward. While riding his bike in Greenville, Delaware, Martin was involved in a collision with a motorist, David H. Nixon.[5] In May 2016, Martin retained Castle for alleged personal injuries through an oral contract.[6] Rather than the usual contingency fee arrangements for these types of cases, Martin prepaid a $10,000 retainer, and Castle filed a Complaint against Nixon in August 2017 ("the *Nixon* case").[7] The agreement allowed Martin to draft documents with Castle reviewing and filing them.[8] In October 2018, Castle requested and received an additional $10,000 retainer.[9]

Sadly, Castle passed away unexpectedly on January 8, 2019.[10] A trial was set for March 2019. Within ten days of Castle's passing, Hudson substituted his appearance.[11] At a January 23, 2019 meeting, Hudson informed Martin of the challenges in representation due to Castle's death and Hudson's increased workload.[12] Hudson explained he could not represent Martin but had entered his appearance solely to facilitate communication with the Court and opposing counsel.[13] Within a week, Hudson moved to withdraw from the *Nixon* case,[14] and

---

[4] Unless otherwise noted, this Court's recitation is drawn from Plaintiff's Complaint and all documents the parties incorporated by reference.

[5] Compl. ¶ 6.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 9; *See* D.I. 16 ¶ 2.

[8] Defendants' Motion for Summary Judgment at 2, D.I. 175 (hereafter "Defs.' MSJ").

[9] Compl. ¶ 11.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 14.

[12] Defendants' Answer and Affirmative Defenses ¶ 15, D.I. 11 (hereinafter "Answer").

[13] D.I. 110, Ex. B ¶ 2 (hereafter "Hudson's Letter").

[14] Compl. ¶ 17.

the Court granted that motion.[15] The relationship between Hudson and Martin immediately soured with disputes regarding access to Martin's file,[16] and billing discrepancies concerning Defendants' fees and costs.[17] The Court continued the *Nixon* case for six months to give Martin time to retain new counsel. Despite his efforts, Martin couldn't find anyone to represent him and proceeded to trial *pro se*.[18]

The Court also bifurcated the trial on the issues of liability and damages.[19] In September 2019, a jury returned a verdict on the issue of liability only, finding Martin 43% liable for the accident. In February 2022, the Court entered judgment in favor of Martin in the amount of approximately $56,000 plus costs.[20] Dissatisfied, Martin appealed to the Supreme Court in May 2022.[21] This effort was unsuccessful, and the Supreme Court affirmed in March 2023.[22]

---

[15] Answer ¶ 17.

[16] Hudson explains to have offered Martin physical possession of the firm's file immediately after the Pretrial Conference, but Martin declined to take it at that time. Hudson then asserts to have made subsequent attempts to arrange the transfer of the file to Martin. *See* Answer ¶ 18. Conversely, Martin maintains he had difficulty recovering it. *See* Compl. ¶¶ 18, 19.

[17] Compl. ¶ 18; Answer ¶ 18. The second $10,000 retainer was not credited to Martin's account due to a bookkeeping error. Martin filed a Motion to Compel Payment with the Court. D.I. 176 at 252. In February 2019, Hudson addressed the dispute and provided a balance to be paid at Martin's convenience. *See* Hudson's Letter at 3. Dissatisfied with the calculations, Martin took the issue to the DSBA's Fee Dispute Committee, which awarded Martin the contested amount. D.I. 175 at 255.

[18] Compl. ¶ 31.

[19] *See Martin v. Nixon*, 2022 WL 1123389, at *1 (Del. Super. Apr. 13, 2022), *aff'd*, 295 A.3d 136 (Del. 2023).

[20] The amount was reduced by Plaintiff's comparative fault. *Id.*

[21] "On appeal, Martin's arguments may be fairly summarized as follows: (i) the Superior Court judge should have recused himself because he was biased in favor of Nixon; (ii) Nixon's trial counsel should be sanctioned for denying the existence and content of Nixon's "recorded statement" to his insurance company; (iii) Martin was entitled to present evidence of lost compensation to the jury; (iv) the question of the value of Martin's bicycle should not have been submitted to the jury; (v) and the testimony of the police officer who responded to the scene should have been excluded." *Martin*, 295 A.3d at 136.

[22] *See id.*

## B. THE PRESENT LEGAL MALPRACTICE CASE

Prior to filing the *Nixon* appeal, Martin had filed this legal malpractice against Castle in December 2021 to "mitigate [his] losses."[23]  Blaming Defendants, he alleges Defendants committed legal malpractice due to their failures to 1) to know the law of "the rules of the road" governing cycling; 2) inform him about their plan to sign a Pretrial Stipulation contrary to his legal and financial interests; 3) get his consent to file a stipulation about the testimony of his surgeon, Dr. Getz; and 4) follow Martin's instructions.[24]  He further alleges Hudson did not know 'the rules of the road governing cycling," giving improper legal advice when he told him that the *Nixon* case should never have been filed,[25] and was also dishonest in "impounding" his file.[26]

Martin alleges also that Defendants' failure to "investigate. . . the facts prior to filing the complaint would have resolved any issues about liability, because the police effort to hold Martin liable was evidenced with traffic citations that had no basis in law or in fact. . ." and that a report of Nixon's vehicle damage would have supported Martin's testimony regarding the accident.[27]  Lastly, he alleges "abandonment" in that Defendants "did not find a successor whose schedule and whose expertise allowed for an entry of appearance."[28]  Repeating his allegations, he also asserts a conflict of interest, breach of fiduciary duty, professional negligence, and legal malpractice.[29]

---

[23] *See generally* Compl.

[24] *Id.* ¶¶ 34-38.  Martin asserts these included instructions to preserve his claim for lost income, retain lifestyle witnesses at trial, compel in-person medical testimony, and regarding the recovery of his file.

[25] *Id.* ¶ 39.

[26] *Id.* ¶ 40.

[27] *Id.* ¶ 41.

[28] *Id.* ¶ 42.

[29] Compl. ¶¶ 43-46.

Following years of extensive motion practice and discovery disputes,[30] the parties filed several Motions *in limine* and cross Motions for Summary Judgment.[31] Defendants' motions asserted overlapping reasons for why Martin's evidence needed to be limited, excluded, or otherwise considered waived—the result of which could only lead to summary judgment under Rule 56.[32] In November 2023, this Court heard oral arguments and denied Plaintiff's Motion for Partial Summary Judgment and took Defendants' motions under advisement.[33]

Before this Court could rule, Martin moved to stay these proceedings pending yet another appeal he filed to the Supreme Court on the *Nixon* case.[34] Because the *Nixon* case is at the core of this dispute, this Court granted the stay.[35] In June 2024, the Supreme Court ruled against Martin.[36] Undeterred, he filed a Motion for Rehearing *en banc*; denied in July 2024.[37] With the Supreme Court's consideration of the *Nixon* case now concluded, this Court lifted the stay here,[38] and now considers only Defendants' motions under D.R.E. 702 and Superior Court Civil Rule 56.

---

[30] *See* D.I. 20-228.

[31] *See generally* Defendants' Motion in Limine Expert Legal Evidence, D.I. 110 (hereafter "Defs.' Mot. in Lim."), 113, 111, 175, 195, and 206.

[32] *See* Defs.' MSJ at 3-6. Defendants argue that Martin failed to appeal the Court's Order in *Nixon* that barred the testimony of a cycling expert witness, John Bare, that was excluded by the Court on Nixon's motion because the proffered testimony was not based on investigation but testimony of others, including Martin. And that Martin's claim that Castle failed to retain an accident reconstruction expert does not raise a genuine issue of material fact in this case where he failed to produce any evidence in this case that any such testimony would have yielded a more favorable result than the 53% finding in his favor. *Id.* at 4. They further argue that Martin's assertion that Castle committed legal malpractice because he agreed to enter a stipulation related to his medical treatment by Dr. Getz is without merit where the Court vacated that stipulation, and barred Dr. Getz from testifying as to treatment after December 2016 where the expert did not opine that any such treatment was causally related to the accident. *Id.* at 5.

[33] *See* D.I. 203.

[34] D.I. 217.

[35] D.I. 222.

[36] D.I. 229.

[37] D.I. 232.

[38] D.I. 239.

## STANDARD OF REVIEW

### A. RULE 702—MOTION *IN LIMINE* [REGARDING] EXPERT LEGAL EVIDENCE

The Court serves as a gatekeeper regarding the admissibility of expert testimony.[39] The trial judge determines "whether the proponent of the evidence has demonstrated that scientific conclusions have been generated using sound and reliable approaches."[40] Delaware Rule of Evidence 702 governs the admissibility of expert testimony,[41] providing that an expert witness "may testify . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[42] The party introducing expert testimony bears the burden to demonstrate by a preponderance of the evidence that their opinions are reliable.[43]

### B. RULE 56—MOTION FOR SUMMARY JUDGMENT

The burden of proof on a motion for summary judgment under Superior Court Civil Rule 56 falls on the moving party to demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[44] If the moving party satisfies its initial burden, the non-moving party must

---

[39] *Li v. GEICO Advantage Ins. Co.*, 2019 WL 4928614, at *1 (Del. Super. Oct. 7, 2019) (citing *Sturgis v. Bayside Health Ass'n*, 942 A.2d 579, 583 (Del. 2007)).

[40] *State v. Phillips*, 2015 WL 5168253, at *3 (Del. Super. Sept. 2, 2015) (quoting *State v. McMullen*, 900 A.2d 103, 114 (Del. Super. 2006)).

[41] D.R.E 702 provides "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

[42] *Phillips*, 2015 WL 5168253, at *3 (quoting D.R.E. 702).

[43] *Id.* (citing *McMullen*, 900 A.2d at 114).

[44] Super. Ct. Civ. R. 56(c).

sufficiently establish the "existence of one or more genuine issues of material fact."[45]  Summary judgment will not be granted if there is a material fact in dispute or if "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[46]  "All facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[47]  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury reasonably could find for the plaintiff."[48]

## DISCUSSION

To sustain a legal malpractice claim in Delaware, a plaintiff must establish: (1) the employment of the attorney; (2) the attorney's neglect of a professional obligation; and (3) resulting loss.[49]  Delaware law mandates expert testimony in legal malpractice cases,[50] with a "narrow" exception where the attorney's mistakes are "so obvious that such testimony is not required."[51]

Martin's status as a *pro se* litigant does not alter the Court's application of these legal standards.  While *pro se* pleadings are to be "liberally construed" and "held to less stringent standards,"[52] "there is no different set of rules[.]"[53]  A party's

---

[45] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488, 1995 WL 379125, at *3–4 (Del. 1995); *see also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).

[46] *Ebersole v. Lowengrub*, 180 A.2d 467, 469–70 (Del. 1962). *See also CNH Indus. Am. LLC v. Am. Cas. Co. of Reading*, 2015 WL 3863225, at *1 (Del. Super. June 8, 2015).

[47] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986) (citing *Mechell v. Plamer*, 343 A.2d 620, 621 (Del. 1975); *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748, 752 (Del. Super. 1978)).

[48] *Smiley v. Taylor*, 2008 WL 5206811, at *2 (Del. Super. Dec. 10, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[49] *Sherman v. Ellis*, 246 A. 3d 1126, 1131 (Del. 2021).

[50] *Korotki v. Hiller & Arban, LLC*, 2017 WL 2303522, at *5 (Del. Super. May 23, 2017).

[51] *Id.*

[52] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Erickson v. Pardis*. 551 U.S. 89, 94 (2007).

[53] *Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001).

insufficient legal knowledge is not a valid defense or grounds for leniency in meeting claim requirements.[54]

When Martin previously argued that Defendants' alleged mistakes did not require an expert,[55] this Court rejected his argument and directed Martin to secure an expert.[56] He now designates New Jersey licensed Professor Michael P. Ambrosio as his standard of care expert. Professor Ambrosio's qualifications are not challenged. He possesses an impressive *curriculum vitae*[57] as a law school professor in various areas of legal studies.[58]

Defendants do, however, challenge Martin's designation as unfit to provide expert testimony in this matter.[59] The *Daubert* challenge is a fair one. The reliability of Professor Ambrosio's opinions in support Martin's claims for legal malpractice are questionable. And on this record, Martin fails to carry his burden of demonstrating the reliability of the proffered 702 evidence. Accordingly, this also implicates the Rule 56 analysis.

---

[54] "Although *pro se* litigants are afforded some leniency in presenting their cases, "[t]here is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate the unrepresented plaintiff." *Damiani v. Gill*, 116 A.3d 1243, 1243 (Del. 2015) (citing *Draper*, 767 A.2d at 799). *See Price v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1213292, at *7 (Del. Super. Mar. 15, 2013) (citing *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

[55] *See* D.I. 20.

[56] D.I. 26.

[57] *See* D.I. 33, Ex. 13a (hereinafter "Ambrosio's CV").

[58] Professor Ambrosio is a Professor of Law at Seton Hall Law School since 1970, with teaching experience to include Professional Responsibility, Legal Malpractice, Remedies and Law & Morality, as well as Business Associations, Contracts, Equity, Trade Regulation, Torts, Criminal Law, Commercial Law, Trial Practice, Business Transactions in the European Union, and The Western Idea of Law. *See id.*

[59] *See* Defs.' Mot. in Lim. at 2.

## A. EXPERT NOT FAMILIAR WITH DELAWARE'S LEGAL STANDARDS

Our Supreme Court has refined expert witness requirements through the "*Brett* Standard."[60] While this rule is not meant to completely exclude out-of-state expert witnesses, they "must be 'well acquainted or thoroughly conversant' with the degree of skill ordinarily employed in the local community."[61] The "*Brett* Standard" demands more than a cursory review of Delaware case law.[62] It requires either an expert with profound familiarity with Delaware's legal standards and skills, or bridging testimony to reconcile potentially differing standards of care between states.[63]

At the outset, Martin offers no bridging expert to establish the equivalence of standards between New Jersey and Delaware.[64] Therefore, Martin fails to establish that the standard of care in both states is identical. Even if he could have done so, Professor Ambrosio's opinion is not based on sufficient facts or data where it could be said he reliably applied principles and methods to the facts of this case. This applies to the allegations of deficient representation as to both Castle and Hudson.

As to Castle, Martin suggests that had he prepped and investigated the *Nixon* case properly, liability would have been established and his damages would have been greater.[65] He perseverates on the failure of the *Nixon* jury to consider in-person

---

[60] *Phillips v. Wilks, Lukoff & Bracegirdle, LLC*, 2014 WL 4930693, at *2 (Del. Oct. 1, 2014) (quoting *Brett v. Berkowitz*, 706 A.2d 509, 517 (Del. 1998)).

[61] *Id.*

[62] "The *Brett* standard requires more than a mere reading of Delaware case law to qualify one as an expert witness." *Id.*

[63] "[I]n cases where an expert is familiar with a different locality where the standard of care is identical to that observed in the relevant Delaware locality, another expert may provide bridging testimony to reconcile the two standards. In the absence of any showing of such familiarity, and without bridging testimony to harmonize the standard of care, the expert testimony must be excluded." *Id.*

[64] "Further, whether the standard of care in Delaware and New Jersey is the same is not an assessment that can be made by the [the party] or [the New Jersey attorney]. Pursuant to *Brett*, this task belongs to an outside bridging expert who is sufficiently familiar with Delaware law to so opine. The purpose of a bridging expert is to confirm that the standard of care in both states at issue is identical." *Id.*

[65] *See* Compl. ¶ 41.

testimony from his treating physician, Dr. Getz, and Castle's decision to sign a stipulation, presumably inaccurate regarding Martin's medical condition and to which Martin did not agree.[66]

Aside from the fact that it was the Court—and not Defendants—that decided to limit Dr. Getz's opinion as to the causal relationship of Martin's alleged injuries in the *Nixon* case, any issue related to the Stipulation had been addressed in the *Nixon* case, vacated at Martin's request and the Court gave Martin time to update his medical treatment if he wished to do so.[67] Yet, Professor Ambrosio testified to having a vague understanding of the Stipulation,[68] did not know it had been vacated,[69] and stated he had no knowledge that the Court had allowed Martin to update his medical evidence.[70] More importantly, Professor Ambrosio further testified that he was "not certain about what the Delaware procedure is regarding

---

[66] *See id.* ¶ 37.

[67] *Martin, v. Nixon*, C.A. No.: N17C-08-152 CEB, D.I. 56, 103, 118, 125.

[68] D.I. 197, Ex. A at 12 (hereafter "Ambrosio's Dep.").

> "Q: Do you have any understanding as to what happened in the litigation in connection with the January 2019 stipulation regarding Dr. Getz?
>
> A: Well, as I understand it there was some blanket prohibition in the original stipulation and the Court modified the stipulation and the Court modified the stipulation but not completely and ultimately Dr. Getz's reports could be read into the record to the jury."

[69] *Id.* at 14 (emphasis added).

> "Q: Do you have an understanding that the stipulation was vacated in its entirety?
>
> A: I did not know that, no."

[70] *Id.* at 14-15 (emphasis added).

> "Q: … Do you have a copy of … an order of the Court allowing any additional report that Plaintiff…may want to provide from Dr. Getz regarding [his] recent treatment and future medical treatment to be provided no later than….?
>
> A: No I do not.
>
> Q: Do you know what reports, if any, Mr. Martin obtained from Dr. Getz and provided in response to that Order?
>
> A: I do not."

10

these stipulations. . . and not really clear as to how far one can go in establishing the basis for the claim. . . ."[71]

Not only is he unfamiliar with Delaware procedure, he had limited knowledge of the *Nixon* matter, conceding he lacked information regarding the testimony of the witnesses, including Martin.[72] Lastly, many of Martin's questions of Professor Ambrosio were improper. The record is replete with proper objections that would have precluded or excluded the expert's testimony in one way or another.[73] As to

---

[71] *See* Defs.' Mot. in Lim. at 2; *see also* Ambrosio's CV. Defs.' Mot. in Lim., Ex. D at 38-39.

[72] Ambrosio's Dep. at 18 (emphasis added).

> "Q: Did you have a copy of the March 19, 2018 transcript from the deposition of James L. Martin?
>
> *A: I did not.*
>
> Q: Did you have a copy of the May 24, 2018 deposition transcript from the testimony of Michael…Rennewanz…?
>
> *A: I'm not certain….*
>
> Q: He was the police officer.
>
> *A: No, I don't think I have it. No.*"

[73] *Id.* at 33 (emphasis added).

> "Q: And in paragraph 7 I refer you to where it says, "strength in the right shoulder was noted to have returned to normal."
>
> A: Yes.
>
> *Q: That's false, is it not,* the strength never - -
>
> Opposing counsel: Objection. . . .
>
> Q: What's the basis for the objection?
>
> Opposing counsel: The basis is the professor would not have any knowledge as to what Dr. Getz stated and what's in the stipulation."
>
> ***

*Id.* at 35 (emphasis added).

> "Q: But there is nothing in here referencing the lost income and ability to continue working at the same level, there's nothing mentioned in this stipulation about that, is there?
>
> Opposing Counsel: Objection. . . .
>
> *A: I don't know if that's medical testimony.*"

the claims against Castle, Professor Ambrosio did not have a good grasp of the *Nixon* record to support any alleged failed litigation strategies.[74] His testimony was based on assumptions or Martin's allegations with no other evidence in support.[75] To the professor's credit, he did not testify that Defendants failed to meet the standard of care despite Martin's leading questions seeking to so establish.[76] Even if the deponent had been properly questioned—and he was not[77]—and Martin established

---

[74] *Id.* at 45 (emphasis added).

> "Q: Whose decision was it or whose strategy was it to offer testimony from John Bare about the rules of the road governing cycling?
>
> Opposing Counsel: Objection. . . .
>
> *A: I'm not certain. . . .*"

[75] *Id.* at 46 (emphasis added).

> "Q: It was the attorney's strategy … to find a cycling expert. Is that your recollection?
>
> Opposing Counsel: Objection. . . .
>
> *A: I'm not certain of that. I'm not certain. My assumption was that. . . .*"

[76] *Id.* at 48.

> "Q: To your knowledge, there was no accident reconstruction expert named or retained by my attorney for the trial for proving liability at trial, right?
>
> Opposing Counsel: Objection. . . .
>
> A: No, I didn't see any evidence of that. But, again, that could be within the scope of a judgment call, not necessarily amounting to professional negligence."
>
> ***

*Id.* at 61-62.

> "Q: A conviction in traffic court about an illegal U-turn would control the issue of liability in the particular case before the jury, would it not?
>
> Opposing counsel: Objection. . . .
>
> A: It would, it would be helpful for sure. But I don't know if you can hold the attorney responsible for ensuring that the police officer makes a judgment to issue a citation for an illegal U-turn. That's not anything that I think is within the control of the attorney or the attorney to make an effort to get the police officer to do his duty, but I don't know if he can be held accountable for the police officer's failure to do his duty."

[77] *Id.* at 49-50 (emphasis added).

> "Q: And with respect to this motorist and his recorded statement to the insurance company, State Farm, *are you aware that he misstated everything* except the date

a breach in the standard of care, the opinion further lacks evidence of a resultant loss or that the trial's outcome would have been any different but for these alleged failures.

Martin next turns to Hudson. Putting him between a rock and a hard place, he alleges that after Castle's sudden passing, Hudson should not have "purported" to represent him due to a conflict of interest and without Martin's consent.[78] In the same breath, he cries foul because Hudson withdrew his representation *and* failed to secure a "successor" attorney.[79]

Martin cites to no caselaw in support of these claims of alleged deficiencies. As to the "purported" representation, Hudson's role was limited. Martin was represented by the Defendant law firm. When Castle died, Hudson properly entered his appearance for a mere week to communicate with the Court in the aftermath of Castle's death. This was reasonable. Hudson met with Martin within weeks of Castle's passing and told him he would not represent him.

Professor Ambrosio opined "there's a violation of the standard of care in withdrawing from the case in a manner that prejudices the interests of the plaintiff going forward. . . ."[80] As a general proposition, this is true if prejudice is established. But in this malpractice case, Martin fails to establish a resultant loss. As stated, Professor Ambrosio's opinion does not acknowledge—as the record is unclear if he even knew—that the Court continued the trial to give Martin time to find new counsel. Even if this fact was known to him, he lacked overall knowledge about the *Nixon* case as his limited comments were namely based on allegations and assumptions provided by Martin.

---

about his involvement in this crash. . . .and that the recorded statement if made available before the trial could have been used to completely compromise his credibility as a witness?

Opposing Counsel: Objection. . . .

A: I am aware of that and *I saw that in the allegations that you made* in the complaint. . . ."

[78] Compl. ¶ 1.

[79] *Id.* ¶ 42.

[80] Ambrosio's Dep. at 41.

As gatekeeper, this Court finds Martin has not carried his required burden of demonstrating the reliability of the proffered Rule 702 evidence as set forth by the Delaware Supreme Court for expert witnesses in legal malpractice cases.

## B. FAILURE TO ESTABLISH *PRIMA FACIE* CASE

Martin's failure to provide the qualified expert is not merely a procedural misstep, but a substantive deficiency fatal to his case. This Court gave him ample opportunities to prosecute his claims. Without expert testimony, Martin fails to establish the applicable standard of care in Delaware and any deviation from it, rendering his claim fundamentally deficient. The Court, bound by legal precedent, will not substitute its own understanding of professional standards of the required expert testimony in a legal malpractice case.

Even in a light most favorable to Martin, the deficiencies in this case are matters of law, not factual disputes that require further inquiry. As such, Defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendant's Motion *in* Limine [Regarding] Expert Legal Evidence is **GRANTED**, and the proffered expert testimony is excluded from the proceedings. Accordingly, Plaintiff fails to establish the elements of his legal malpractice claims and Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Sincerely,

**/s/ *Vivian L. Medinilla***

_____
Vivian L. Medinilla
Judge

cc: Prothonotary-Civil

14